IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. CR-18-227-SLP |
| | ) | |
| JOSEPH MALDONADO-PASSAGE, | ) | Violations: 18 U.S.C. § 1958(a) |
| a/k/a Joseph Allen Maldonado, | ) | 18 U.S.C. § 2 |
| a/k/a Joseph Allen Schreibvogel, | ) | 16 U.S.C. § 1538(a)(1)(B) |
| a/k/a "Joe Exotic," | ) | 16 U.S.C. § 1538(a)(1)(F) |
| | ) | 16 U.S.C. § 3372(d)(2) |
| Defendant. | ) | 16 U.S.C. § 3373(d)(3)(A)(ii) |
| | ) | |

FILED
NOV 07 2018
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____,DEPUTY

## SUPERSEDING INDICTMENT

The Federal Grand Jury charges:

At all times relevant to this Superseding Indictment:

### Introduction

1. Defendant **JOSEPH MALDONADO-PASSAGE** was a resident of the Western District of Oklahoma. He owned and/or operated an exotic animal park in Wynnewood, Oklahoma.

2. C.B. was a resident of the state of Florida.

3. **MALDONADO-PASSAGE** and C.B. had an ongoing dispute regarding the proper care, exhibition, and breeding practices for big cats, such as tigers and lions. Until 2011, the dispute was carried on primarily through traditional and social media.

4. In or about January 2011, C.B. and her related business entities filed a civil

lawsuit against **MALDONADO-PASSAGE** and his related business entities.

5. In or about February 2013, the civil litigation resulted in the court entering a money judgment in excess of $1 million against **MALDONADO-PASSAGE**. Since that time, and continuing until the present, C.B. and her related business entities have been attempting to collect on the money judgment against **MALDONADO-PASSAGE** and his related business entities and their successor entities.

6. Beginning at least by January 2012, **MALDONADO-PASSAGE** posted content online, including on Facebook and YouTube websites, containing threats of violence against C.B.

## Laws Pertaining to Wildlife

7. The Endangered Species Act ("ESA") provided a legal framework for the protection of endangered and threatened wildlife found within the United States. The Secretary of the Interior determined which species were endangered or threatened under the ESA. The Secretary of the Interior delegated the authority to administer endangered and threatened species permit matters to the Director of the U.S. Fish and Wildlife Service. The Service's Division of Management Authority administered the permit program for the import or export of listed species, the sale or offer for sale in interstate and foreign commerce for non-native listed species, and the "taking" of non-native listed wildlife within the United States.

8. All species and subspecies of tigers, *Panthera tigris*, were listed as endangered under the ESA. 50 C.F.R. § 17.11.

9. All species of lemurs, *Lemuridae*, were listed as endangered under the ESA.

50 C.F.R. § 17.11.

10. Effective January 22, 2016, one subspecies of lion, *Panthera leo leo*, was listed as endangered under the ESA. 50 C.F.R. § 17.11. Another subspecies of lion, *Panthera leo melanochaita*, was listed as threatened under the ESA. 50 C.F.R. § 17.11. The prohibitions applicable to endangered species were also applicable to *Panthera leo melanochaita*. 50 C.F.R. §§ 17.40(r), 17.31(a), and 17.21.

11. The ESA makes it illegal to "take" any endangered species of wildlife within the United States. 16 U.S.C. § 1538(a)(1)(B). "Take" is defined as "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

12. The ESA makes it illegal to "sell or offer for sale in interstate or foreign commerce" any endangered species of wildlife. 16 U.S.C. § 1538(a)(1)(F).

13. The ESA makes it illegal for "any person subject to the jurisdiction of the United States to attempt to commit, solicit another to commit, or cause to be committed, any offense" under the ESA. 16 U.S.C. § 1538(g).

14. A person could become authorized to conduct activities otherwise prohibited under the ESA, such as taking and sales in interstate commerce, only if that person either obtained a specific permit from the U.S. Fish and Wildlife Service or became registered under the Service's Captive-Bred Wildlife (CBW) regulations. Issuance of an ESA permit and CBW registration require the applicant to demonstrate that his/her activities will enhance the propagation or survival of the species. *See* 50 C.F.R. § 17.21.

15. Effective May 5, 2016, the CBW regulations applied to all tigers, including

inter-subspecific crossed or "generic" tigers.

16. The Lacey Act makes it illegal for "any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be . . . transported in interstate or foreign commerce." 16 U.S.C. § 3372(d)(2).

17. **MALDONADO-PASSAGE** did not obtain any ESA permits from the U.S. Fish and Wildlife Service and was not registered under the CBW regulations.

## Count 1
**(Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire)**

18. The Federal Grand Jury incorporates paragraphs 1-6 by reference.

19. At least by early November 2017, **MALDONADO-PASSAGE** inquired of Individual 1 whether Individual 1 would travel to Florida to murder C.B. in exchange for a sum of money. Individual 1 told **MALDONADO-PASSAGE** that he would travel to Florida to murder C.B. in exchange for a sum of money.

20. On or about November 6, 2017, **MALDONADO-PASSAGE** caused Individual 1 to travel from the Western District of Oklahoma to Dallas, Texas, to obtain a fake identification card for use in a proposed plot for Individual 1 to travel to Florida to murder C.B.

21. On or about November 25, 2017, **MALDONADO-PASSAGE** used the U.S. Postal Service to mail Individual 1's cell phone from the Western District of Oklahoma to Nevada to conceal Individual 1's involvement in a proposed plot to murder C.B. in Florida.

22. On or about November 25, 2017, in the Western District of Oklahoma,

**MALDONADO-PASSAGE** gave Individual 1 approximately $3,000 in cash in exchange for Individual 1's agreement to travel to Florida to murder C.B. **MALDONADO-PASSAGE** had obtained the cash the previous day from the sale of a big cat. **MALDONADO-PASSAGE** promised to pay Individual 1 thousands of dollars more after Individual 1 murdered C.B.

23. **MALDONADO-PASSAGE** agreed with Individual 1 that Individual 1 would travel from the Western District of Oklahoma to South Carolina, and then to Florida, to murder C.B.

24. On or about November 26, 2017, Individual 1 traveled from the Western District of Oklahoma to South Carolina.

25. No physical harm came to C.B. as a result of **MALDONADO-PASSAGE's** proposed plot for her murder.

26. In or about November 2017, in the Western District of Oklahoma and elsewhere,

---------------------------------- JOSEPH MALDONADO-PASSAGE,
                                a/k/a Joseph Allen Maldonado,
                                a/k/a Joseph Allen Schreibvogel,
                                a/k/a "Joe Exotic," ----------------------------------------

caused another person to travel in interstate commerce, used and caused another person to use the mail, and used and caused another person to use any facility of interstate commerce, with intent that the murder of C.B. be committed in violation of the laws of the state of Oklahoma and the state of Florida as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

All in violation of Title 18, United States Code, Section 1958(a), and Title 18, United States Code, Section 2.

## Count 2
### (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire)

27. The Federal Grand Jury incorporates paragraphs 1-6 by reference.

28. Beginning in approximately July 2016, and continuing through approximately March 2018, **MALDONADO-PASSAGE** repeatedly asked Individual 2 whether Individual 2 could find someone to murder C.B. in exchange for a sum of money.

29. On or about December 5, 2017, Individual 2 called from his cell phone and spoke with **MALDONADO-PASSAGE** on his cell phone. Individual 2 offered to introduce **MALDONADO-PASSAGE** to a person who would be willing to murder C.B. in exchange for a sum of money. **MALDONADO-PASSAGE** agreed to the meeting.

30. On or about December 8, 2017, Individual 2 introduced **MALDONADO-PASSAGE** to an undercover FBI agent, and together the three individuals discussed the details of **MALDONADO-PASSAGE's** proposed plot to murder C.B.

31. On various dates from December 2017 to March 2018, **MALDONADO-PASSAGE** used his cell phone to speak with Individual 2 on his cell phone about using the undercover FBI agent to murder C.B.

32. No physical harm came to C.B. as a result of **MALDONADO-PASSAGE's** proposed plot for her murder.

33. Beginning at least by December 5, 2017, and continuing through about March 2018, in the Western District of Oklahoma,

------------------------------ **JOSEPH MALDONADO-PASSAGE,**
    **a/k/a Joseph Allen Maldonado,**
    **a/k/a Joseph Allen Schreibvogel,**
    **a/k/a "Joe Exotic,"** ------------------------------------------------

used and caused another person to use any facility of interstate commerce, with intent that the murder of C.B. be committed in violation of the laws of the state of Oklahoma and the state of Florida as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

All in violation of Title 18, United States Code, Section 1958(a), and Title 18, United States Code, Section 2.

## Counts 3-7
### (Violation of the Endangered Species Act)

34. The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

35. In or around October 2017, **MALDONADO-PASSAGE** anticipated the arrival of certain big cats that were to be boarded for a fee at the exotic animal park. **MALDONADO-PASSAGE** needed empty cages to house the big cats.

36. In or around October 2017, in the Western District of Oklahoma,

------------------------------ **JOSEPH MALDONADO-PASSAGE,**
    **a/k/a Joseph Allen Maldonado,**
    **a/k/a Joseph Allen Schreibvogel,**
    **a/k/a "Joe Exotic,"** ------------------------------------------------

knowingly and unlawfully took the following endangered species of wildlife, by shooting and killing them:

| Count | Endangered Species |
|-------|--------------------|
| 3 | Tiger (*Panthera tigris*) #1 |
| 4 | Tiger (*Panthera tigris*) #2 |
| 5 | Tiger (*Panthera tigris*) #3 |
| 6 | Tiger (*Panthera tigris*) #4 |
| 7 | Tiger (*Panthera tigris*) #5 |

All in violation of Title 16, United States Code, Section 1538(a)(1)(B), and Title 18, United States Code, Section 2.

### Count 8
### (Violation of the Endangered Species Act)

37. The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

38. On or about October 30, 2017, in the Western District of Oklahoma and elsewhere,

------------------------------ **JOSEPH MALDONADO-PASSAGE,**
a/k/a **Joseph Allen Maldonado,**
a/k/a **Joseph Allen Schreibvogel,**
a/k/a **"Joe Exotic,"** -------------------------------------------

knowingly and unlawfully offered for sale in interstate commerce endangered species of wildlife, namely two tiger cubs (*Panthera tigris*).

All in violation of Title 16, United States Code, Section 1538(a)(1)(F), and Title 18, United States Code, Section 2.

### Counts 9-11
### (Violation of the Endangered Species Act)

39. The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

40. On or about the following dates, in the Western District of Oklahoma and elsewhere,



-------------------------------- JOSEPH MALDONADO-PASSAGE,
a/k/a Joseph Allen Maldonado,
a/k/a Joseph Allen Schreibvogel,
a/k/a "Joe Exotic," -------------------------------------------

knowingly and unlawfully sold in interstate commerce from the Western District of Oklahoma to the following destinations, the following endangered species of wildlife:

| Count | Date | Animal | Recipient/ Destination |
|---|---|---|---|
| 9 | 11/16/16 | Tiger, male, cub | Brown Zoo, Illinois |
| 10 | 2/3/18 | Tiger, female, 11 weeks old | T.S., Indiana |
| 11 | 3/6/18 | Tiger, female, 6 weeks old | Brown's Oakridge Zoo, Illinois |

All in violation of Title 16, United States Code, Section 1538(a)(1)(F), and Title 18, United States Code, Section 2.

### Counts 12-20
### (Violation of the Lacey Act: False Labeling of Wildlife)

41. The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

42. On or about the dates listed below, in the Western District of Oklahoma and elsewhere,



-------------------------------- JOSEPH MALDONADO-PASSAGE,
a/k/a Joseph Allen Maldonado,
a/k/a Joseph Allen Schreibvogel,
a/k/a "Joe Exotic," -------------------------------------------

knowingly made and submitted and caused to be made and submitted a false record, account, and label for, and a false identification of the following wildlife with a market value greater than $350, that was transported and that was intended to be transported in interstate commerce. Specifically, **MALDONADO-PASSAGE** designated and caused to be designated on delivery forms and Certificates of Veterinary Inspection (CVI) that the

wildlife was being donated to the recipient or transported for exhibition only, when he knew that, in fact, the wildlife was being sold in interstate commerce:

| Count | Date | Animal | False Form | Recipient/ Destination |
|---|---|---|---|---|
| 12 | 11/16/16 | Tiger, male, cub | Delivery form | Brown Zoo, Illinois |
| 13 | 12/15/16 | Lion, female, 5 years old | Delivery form | Monterey Zoo, California |
| 14 | 12/16/16 | African lion, female, 5 years old | CVI | Monterey Zoo, California |
| 15 | 6/11/17 | Lion, white female, 6 weeks old | Delivery form | T.S., Indiana |
| 16 | 2/3/18 | Tiger, female, 11 weeks old | Delivery form | T.S., Indiana |
| 17 | 3/6/18 | Tiger, female, 6 weeks old | Delivery form | Brown's Oakridge Zoo, Illinois |
| 18 | 6/12/18 | African lion, male, 8 years old African lion, female, 8 years old | CVI | Animal Haven Zoo, Wisconsin |
| 19 | 6/13/18 | Lion, male, 5 years old Lion, female, 7 years old | Delivery form | Animal Haven Zoo, Wisconsin |
| 20 | 6/18/18 | Lion, male, 2 weeks old Lion, male, adult, "Moses" | Delivery form | Branson Wild World, Missouri |

All in violation of Title 16, United States Code, Section 3372(d)(2), and Section 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

### Count 21
### (Violation of the Lacey Act: False Labeling of Wildlife)

43.   The Federal Grand Jury incorporates paragraphs 1 and 7-16 by reference.

44.   On or about September 29, 2017, in the Western District of Oklahoma and elsewhere,

------------------------- JOSEPH MALDONADO-PASSAGE,
   a/k/a Joseph Allen Maldonado,
   a/k/a Joseph Allen Schreibvogel,
   a/k/a "Joe Exotic," -------------------------------------

10

knowingly made and submitted a false record, account, and label for, and a false identification of wildlife, namely a 10-week-old female lemur, with a market value greater than $350, in that **MALDONADO-PASSAGE** created a delivery form showing that the lemur was donated from himself to Ringling Animal Care, in Ringling, Oklahoma, when he knew that, in fact, the lemur had been sold and transported in interstate commerce.

All in violation of Title 16, United States Code, Section 3372(d)(2), and Section 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

A TRUE BILL:

*[signature]*

FOREPERSON OF THE GRAND JURY

ROBERT J. TROESTER
First Assistant United States Attorney

*[signature: Amanda Green]*

AMANDA GREEN
Assistant U.S. Attorney