IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,   )<br>  )<br>   Plaintiff,   )<br>  )<br>v.   )<br>  )<br>  )<br>  )<br>JOSEPH MALDONADO-PASSAGE,   )<br>  )<br>   Defendant.   ) | Case No. CR-18-227-SLP<br><br>(For consideration by Magistrate Judge<br>  Bernard M. Jones) |

**MOTION TO REOPEN DETENTION HEARING
AND BRIEF IN SUPPORT**

Counsel for defendant Joseph Maldonado-Passage, move to reopen the order of detention entered October 4, 2018. [*Doc. 18*] A proposed order granting the relief sought is included with this motion. In support of this motion, counsel states:

**FACTS**

1) On September 5, 2018, a federal grand jury returned an Indictment against Mr. Maldonado-Passage alleging two violations of 18 U.S.C. §1958. A warrant for Mr. Maldonado-Passage's arrest was issued pursuant the Indictment;

2) Before leaving Oklahoma, Mr. Maldonado-Passage retained the services of an attorney for the express purpose of coordinating self-surrender if charges were to be filed;

3) On September 7, 2018, Mr. Maldonado-Passage was arrested on the warrant in Gulf Breeze, Florida. Mr. Maldonado-Passage made no attempt to flee from law enforcement when arrested. Mr. Maldonado-Passage was not in possession of a weapon when arrested;

4) Mr. Maldonado-Passage was held in the Santa Rosa County Jail pending removal to the Western District of Oklahoma. On September 19, 2018, Mr. Maldonado-Passage was removed from the Santa Rosa County Jail and transported to the United States

Penitentiary in Atlanta, Georgia. On September 23, 2018, Mr. Maldonado-Passage placed a telephone call to John Finlay. During that call Mr. Maldonado-Passage advise that if he did not get released on bond he "was going to live with Travis." The government alleges this statement was a threat of self-harm by Mr. Maldonado-Passage in that "Travis" referred to his deceased former husband;

5) On September 27, 2018, Mr. Maldonado-Passage made an initial appearance in the Western District of Oklahoma. Counsel was appointed to represent him. The government requested detention citing, a) danger to the community, and, b) risk of flight. A detention hearing was scheduled for October 4, 2018;

6) The government presented evidence at the detention hearing of numerous "threats" to the person referred to as "Jane Doe" in the Indictment. The government played several video clips from Youtube and Facebook, to include some from Mr. Maldonado-Passage's online TV show, in which Mr. Maldonado-Passage threatened violence to Jane Doe beginning as early as 2012;

7) Magistrate Judge Jones granted the government's motion for detention at the conclusion of the hearing. The Court entered an order detaining Mr. Maldonado-Passage based on the determination "no condition or combination of conditions will reasonably assure the safety of any other person and the community." *[Doc. 18, p. 2]* The Court did not find Mr. Maldonado-Passage posed a risk of non-appearance. *Id*.;

8) The Court orally expressed concern about Mr. Maldonado-Passage's mental health. The Court construed the allegations in the Indictment as indicative of Mr. Maldonado-Passage putting his past words into action. The Court placed great emphasis on Mr. Maldonado-Passage's threat to harm himself and the lack of a condition or combination of conditions to address this issue;

9) A Superseding Indictment was returned by the federal grand jury after the detention hearing. The Superseding Indictment contained nineteen new charges in addition to the two counts of "murder-for-hire" alleged in the original Indictment. The new charges are comprised of Counts 3 through 11, misdemeanor violations of the Endangered Species Act, 16 U.S.C. §1538(a)(1), and Counts 12 through 21, felony violations of the Lacey Act, 16 U.S.C. §3372(d)(2), alleging falsification of records pertaining to the transportation and/or sale of wildlife;

10) Circumstances have changed since the detention hearing. Counsel for Mr. Maldonado-Passage have received additional information that was not known at the time of the detention hearing that has a material bearing on the issue of danger to a person or the community";

11) In terms of the factors warranting detention and specified by the Court in the oral and written orders of detention, the following new information is submitted: An evaluation of Mr. Maldonado-Passage reflects he poses neither a risk of harm to himself or to others.[1]

**ARGUMENT**

Pursuant to Title 18, United States Code, §3142(f), Mr. Maldonado-Passage moves to reopen the hearing on the government's motion for detention. Section 3142(f) provides, in pertinent part:

> The hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community.

---

[1] See Exhibit 1, filed under seal pursuant the Court's order dated November 20, 2018. (Doc. 28).

Counsel for Mr. Maldonado-Passage submit the information not known to him at the time of the original detention hearing rebuts the government's argument for detention and the Court's finding that detention was warranted.

The deprivation of a defendant's liberty prior to the determination of guilt is a serious matter. "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act describes a hierarchy of options for the judicial officer *beginning* with release "on personal recognizance or upon execution of an unsecured bond." 18 U.S.C. 3142(a)(1). If the Court determines more assurance is needed, it must then consider the conditions described in subsection (c) of 3142. *See* 18 U.S.C. §3142(a)(2). The Court *cannot* detain if it merely determines an own recognizance bond will not prevent flight or danger to the community. The Court *must* consider other conditions. "The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention." *United States v. Orta*, 760 F.2d 887, 890-91 (8th Cir. 1985) (en banc).

At the detention hearing, the government attempted to portray Mr. Maldonado-Passage as an individual posing a risk to not only a specified person, but also to himself. As it concerns the risk to a specified person, the government's evidence was in the form of numerous video clips in which Mr. Maldonado-Passage either implicitly or explicitly desired to harm Jane Doe. A closer review of these clips and the context in which the statements were made implicates speech, which is arguably repugnant, yet protected by the Constitution.

The government contended that Mr. Maldonado-Passage's speech was a basis to detain him. However, Mr. Maldonado-Passage submits the Youtube and Facebook posts relied on by the government are not threats. Instead, these vitriolic rants are well within Mr. Maldonado-Passage's protected speech rights. *See United States v. Carmichael*, 326

F.Supp.2d 1267, 1301 (M.D. Ala.), *supplemented*, 326 F.Supp.2d 1303 (M.D. Ala. 2004) (holding a defendant's website with a mock "wanted" poster seeking information about individuals in his case was "not a serious threat sufficient to warrant a prior restraint on...speech or an imposition on his constitutional right to investigate his case"); *Watts v. United States*, 394 U.S. 705, 706 (1969) (holding that Vietnam war protestor engaged in protected speech when saying "...I have already received my draft classification as 1-A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."); *United States v. O'Dwyer*, 443 Fed.Appx. 18, 19 (5th Cir. 2011) (upholding the district court's dismissal of an indictment for making threats via interstate communication when defendant sent the following email to a federal employee of the Bankruptcy Court for the Eastern District of Louisiana: "maybe my creditors would benefit from my suicide, but suppose I become 'homicidal'? Given the recent 'security breach' at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal."), *cf. Elonis v. United States*, 135 S.Ct. 2001 (2015) (In prosecution under 18 U.S.C. §875(c), defendant must intend communications to be viewed as threats).

      Mr. Maldonado-Passage's speech, which falls short of that which would be illegal, ought not be considered as a basis, partial or otherwise, to deprive him of freedom pre-trial. Such consideration violates the First Amendment. Combined with a finding Mr. Maldonado-Passage does not pose a risk to others, the Court's determination he should be detained to protect Jane Doe should be vacated.

      The government also argued Mr. Maldonado-Passage's alleged suicidal ideation supported a finding that he posed a risk of flight warranting detention. The Court declined to hold Mr. Maldonado-Passage posed a risk of flight warranting an order of detention. To

the extent the argument Mr. Maldonado-Passage posed a risk of self-harm affected the Court's decision, the evidence in Exhibit 1 reflecting he no longer poses a risk of self-harm undermines the Court's determination he should be detained.

The new information referenced in this motion and Exhibit 1 impacts directly the concerns about danger. The defense respectfully moves the Court to vacate the detention order in favor of releasing Mr. Maldonado-Passage on pretrial conditions.

Respectfully submitted,

*s/ William P. Earley*
WILLIAM P. EARLEY
KYLE E. WACKENHEIM
ASSISTANT FEDERAL PUBLIC DEFENDERS
Bar Number 11293
SUITE 109, 215 DEAN A. McGEE AVENUE
OKLAHOMA CITY, OKLAHOMA 73102
(405)609-5930   FAX (405) 609-5932
COUNSEL FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 20th day of November, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants: Amanda Green and Charles Brown, Assistant United States Attorneys.

*s/ William P. Earley*
WILLIAM P. EARLEY