IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  CR-18-227-SLP |
| | ) | |
| JOSEPH MALDONADO-PASSAGE, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS COUNTS AS MULTIPLICITOUS
AND BRIEF IN SUPPORT**

Defendant, Joseph Maldonado-Passage, submits this motion and brief containing arguments and authority in support of the dismissal of either Count 1 or Count 2 of the Superseding Indictment filed November 7, 2018.  Counts 1 and 2 of the Superseding Indictment are multiplicitous and Mr. Maldonado-Passage potentially faces multiple punishments for acts that constitute one criminal offense.  The government should be required to elect on which of Counts 1 or 2 it intends to proceed to trial.

**FACTS**

1)      On November 7, 2018, Mr. Maldonado-Passage was charged in a 21 count Superseding Indictment returned by the federal grand jury.  Mr. Maldonado-Passage is charged in Counts 1 and 2 with "murder-for-hire," violations of 18 U.S.C. §1958(a), Counts 3 through 11, misdemeanor violations of the Endangered Species Act, 16 U.S.C. §1538(a)(1), and Counts 12 through 21, felony violations of the Lacey Act, 16 U.S.C. §3372(d)(2), alleging falsification of records pertaining to the transportation and/or sale of wildlife;

2)      Count 1 of the Superseding Indictment alleges Mr. Maldonado-Passage caused another person to travel in interstate commerce and used or caused to be used facilities of interstate commerce with the intent that the murder of C.B. be committed.  Count 2 of the

Superseding Indictment alleges Mr. Maldonado-Passage used or caused to be used facilities of interstate commerce with the intent that the murder of C.B. be committed;

3) The discovery material reflects an ongoing investigation by agents with the Department of the Interior U.S. Fish and Wildlife Service into violations of the Endangered Species Act and the Lacey Act beginning in 2015. The case agent's grand jury testimony suggests law enforcement became aware of threats toward C.B. as early as late 2016. Further investigation revealed Mr. Maldonado-Passage's numerous posts on social media and internet videos wishing harm to come to C.B;

4) During the course of the investigation information came to an agent's attention suggesting Mr. Maldonado-Passage may be trying to hire someone to murder the person identified as C.B. in Counts 1 and 2. In August of 2017, the person identified as Individual 2 in Count 2 of the Superseding Indictment was contacted by the case agent. On September 14, 2017, Individual 2 informed the agent that Mr. Maldonado-Passage asked him several times if he could find someone to kill C.B., the most recent inquiry being in July 2017. Individual 2 advised the case agent he could introduce someone in law enforcement to Mr. Maldonado-Passage to further a murder for hire investigation;

5) As part of Individual 2's efforts, on September 29, 2017, Individual 2 met with Mr. Maldonado-Passage. Individual 2 advised Mr. Maldonado-Passage one of "his guys" had recently been released from jail and needed cash, intimating that he could take care of C.B. for a price. Individual 2 testified at the grand jury these statements were made to Mr. Maldonado-Passage with the intention of introducing an undercover agent to him for the purpose of furthering a murder for hire investigation;

6) Simultaneous to continued efforts to introduce an undercover agent to Mr. Maldonado-Passage as a potential hit man, Individual 2, in or about early November 2017,

was seeking and providing information about alleged efforts to have the person identified as Individual 1 in Count 1 of the Superseding Indictment kill C.B.;

7) Individual 1 was a long time associate of Jeff Lowe, the new owner of the park. Jeff Lowe began actively cooperating with the case agent in this matter. It is not clear from the discovery material produced to date when that cooperation began. There appears to be some relationship between Individual 2 and Jeff Lowe prior to the events alleged in Counts 1 and 2;

8) Individual 2 repeatedly contacted Mr. Maldonado-Passage for the express purpose of persuading him to abandon perceived plans to have Individual 1 kill C.B. and instead use "his guy." Individual 2 touted "his guy" as more reliable and capable of getting the job done;

9) In spite of the government's allegations in paragraphs 20 through 24 of the Superseding Indictment, nothing developed from the allegation that Individual 1 would commit the murder of C.B.. In fact, the case agent's grand jury testimony was that Individual 1 had told Individual 2 he "wasn't doing it anymore and he was just going back to South Carolina to be with his family." That is indeed what happened;

10) Unsatisfied that the plot to kill C.B. seemed to have ended, Individual 2 and the case agent continued their efforts to get Mr. Maldonado-Passage to further the plot to kill C.B. using an undercover agent as the hit man. Efforts to engage Mr. Maldonado-Passage to further the plot using the undercover agent continued through December 2018 into March 2018. The plot to kill C.B., as extended by the government's efforts, fizzled as Mr. Maldonado-Passage never entered into a promise or agreement to engage the undercover agent in a plot to kill C.B..

**LAW AND ARGUMENT**

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir.1997).

> The test for multiplicity "is whether the individual acts [alleged in the counts at issue] are prohibited, or the course of [conduct] which they constitute." [*United States v. Graham*, 305 F.3d 1094, 1100 (10th Cir.2002)] (internal quotation marks omitted). "If the former, then each act is punishable separately. If the latter, there can be but one penalty." *Id*. (internal quotation marks omitted).

*United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006).

The statutory language governing the offenses charged must be examined to determine the unit of prosecution provided by the statute. *See United States v. Jackson*, 736 F.3d 953, 956 (10th Cir. 2013). Section 1958(a) of Title 18, United States Code, provides in pertinent part:

> (a) Whoever travels in or causes another . . . to travel in interstate . . . commerce, or uses or causes another . . . to use . . . any facility of interstate . . . commerce, with intent that a murder be committed in violation of the laws of any State . . . as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, . . . .

is guilty of an offense against the laws of the United States.

The gravamen of the offense defined by §1958(a) is the plot to kill another person. Thus, the unit of prosecution is a single plot to murder a single individual. *United States v. Gordon*, 875 F.3d 26 (1st Cir. 2017). Taking the anticipated evidence in the light most favorable to the government, at best the government's evidence supports a single charge of violating 18 U.S.C. §1958(a). There is at best but a single plot to murder a single individual.

In the light most favorable to the government, the evidence reflects that law enforcement became aware of Mr. Maldonado-Passage's extreme dislike for C.B. as early as 2015. Aided by Individual 2, law enforcement sought to engage Mr. Maldonado-Passage in an agreement to hire a hit man to kill C.B. in September 2017. During the course of the

efforts to get Mr. Maldonado-Passage to enter into an agreement with an undercover agent it was learned that another individual had supposedly been contacted about killing C.B.. That person is identified as Individual 1 in Count 1 of the Superseding Indictment, the long time associate of Jeff Lowe who also cooperated with the government agent.

Acting on behalf of law enforcement, Individual 2 on numerous occasions sought to persuade Mr. Maldonado-Passage to use "his guy" instead of Individual 1. In effect, the government sought to substitute their undercover agent as the "hit man." When Individual 1 apparently was completely out of the picture, in December 2017 the government stepped up efforts to continue the plot to kill C.B. by contacting Mr. Maldonado-Passage on numerous occasions. Those contacts continued for several months, to no avail.

In the light most favorable to the government, the evidence shows but a single plot to kill C.B.. Initially, the plot involved efforts by the government to have Mr. Maldonado-Passage enter into an agreement with an undercover agent to kill C.B.. When the government became aware Individual 1 had supposedly been engaged by Mr. Maldonado-Passage to kill C.B., the government efforted to convince Mr. Maldonado-Passage to use their "guy" instead. Those efforts to get Mr. Maldonado-Passage to use their "guy" continued unabated after Individual 1 was no longer part of the plot.

The Superseding Indictment in this case reflects Counts 1 and 2 charge a single violation of 18 U.S.C. §1958(a). As a result, charging one act in multiple counts results in the charges being multiplicitous. A motion to dismiss should be granted if the government has artificially separated a single, continuous event through its charging practices.

## CONCLUSION

Mr. Maldonado-Passage recognizes it is within the discretion of the court to require the government to elect between multiplicitous counts before trial. *Johnson*, 130 F.3d at

1426. Where, as in this case, it is obvious that the defendant will be prejudiced by allowing the government to proceed to trial on multiplicitous charges, the Court should require an election. This is not a case where two separate firearm charges arising from the possession of a single firearm have been charged. *See, e.g., Johnson*. This is a case in which the government has charged two "murder for hire" counts. The indication to the jury that these matters are separate events is highly prejudicial.

> The risk of a trial court not requiring pretrial election is that it "may falsely suggest to a jury that a defendant has committed not one but several crimes." *United States v. Duncan*, 850 F.2d 1104, 1108 n. 4 (6th Cir.1988); *see also United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir.1986) (multiple indictments create the impression of more criminal activity than in fact occurred). "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue," and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges. *United States v. Clarridge*, 811 F.Supp. 697, 702 (D.D.C.1992).

*Johnson*, 130 F.3d at 1426.

For the forgoing reasons, Mr. Maldonado-Passage requests the Court direct the United States Attorney to elect on which of Counts 1 or 2 it intends to proceed to trial.

Respectfully submitted,

*s/ William P. Earley*
WILLIAM P. EARLEY
Bar Number 11293
KYLE E. WACKENHEIM
Bar Number 30760
ASSISTANT FEDERAL PUBLIC DEFENDERS
SUITE 109, 215 DEAN A. McGEE AVENUE
OKLAHOMA CITY, OKLAHOMA 73102
(405)609-5930 FAX (405) 609-5932
E-mail william.earley@fd.org

## CERTIFICATE OF SERVICE

  I hereby certify that on this the 5th day of December, 2018, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants: Amanda Green and Charles Brown, Assistant United States Attorneys.

        *s/ William P. Earley*
        WILLIAM P. EARLEY