# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. CR-18-227-SLP |
| | ) | |
| JOSEPH MALDONADO-PASSAGE, | ) | |
|   a/k/a Joseph Allen Maldonado, | ) | |
|   a/k/a Joseph Allen Schreibvogel, | ) | |
|   a/k/a "Joe Exotic," | ) | |
| | ) | |
| Defendant. | ) | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SEVER

Defendant has moved the Court to sever Counts 1 and 2 from Counts 3-21 of the Superseding Indictment, citing Federal Rules of Criminal Procedure 8(a) and 14. (Doc. 38, Defendant's Motion). Because the plots to hire someone to murder C.B. (Counts 1 and 2) are properly joined with the crimes relating to wildlife (Counts 3-21), and because the joinder will not result in actual prejudice to Defendant that outweighs the expense and inconvenience of separate trials, Defendant's Motion to Sever should be denied.

### DISCUSSION

**I.** **The two counts of murder-for-hire are properly joined with the counts relating to wildlife crimes.**

The Tenth Circuit has stated,

> [u]nder Fed.R.Crim.P. 8(a), joinder of offenses is permitted if the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or

transactions connected together or constituting parts of a common scheme or plan." Although alleged misjoinder under Rule 8 is a question of law subject to *de novo* review, we construe Rule 8 broadly to allow liberal joinder to enhance the efficiency of the judicial system.

*United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997) (citing *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995)). The relationship between the two murder-for-hire counts and the wildlife violations becomes apparent when one examines the relationship between Defendant and C.B., the victim of the murder-for-hire plots. The Superseding Indictment alleges that:

    1.    Defendant **JOSEPH MALDONADO-PASSAGE** was a resident of the Western District of Oklahoma. He owned and/or operated an exotic animal park in Wynnewood, Oklahoma.

    2.    C.B. was a resident of the state of Florida.

    3.    **MALDONADO-PASSAGE** and C.B. had an ongoing dispute regarding the proper care, exhibition, and breeding practices for big cats, such as tigers and lions. Until 2011, the dispute was carried on primarily through traditional and social media.

    4.    In or about January 2011, C.B. and her related business entities filed a civil lawsuit against **MALDONADO-PASSAGE** and his related business entities.

    5.    In or about February 2013, the civil litigation resulted in the court entering a money judgment in excess of $1 million against **MALDONADO-PASSAGE**. Since that time, and continuing until the present, C.B. and her related business entities have been attempting to collect on the money judgment against **MALDONADO-PASSAGE** and his related business entities and their successor entities.

    6.    Beginning at least by January 2012, **MALDONADO-PASSAGE** posted content online, including

> on Facebook and YouTube websites, containing threats of violence against C.B.

(Doc. 24, pp. 1-2). These factual allegations are sufficient to connect the murder-for-hire counts and the wildlife counts because the government expects the evidence at trial to show the following:

- Under USDA regulations, big cats like tigers and lions can only be handled by members of the public – for instance for photos, petting, or hand-feeding – for a period of a few weeks, when they are cubs old enough to have a developed immune system but small enough not to pose a risk of injury.

- C.B. was and is the owner of a big cat sanctuary and an animal rights activist. She believes that the human handling of big cat cubs is itself inhumane and also that it creates a commercial incentive to excessively breed big cats to feed the demand for age-appropriate animals and to remove infant cubs from their mothers too early, which jeopardizes the cubs' health. C.B. believes that these practices result in the illegal sale of cubs, as well as a surplus of adult tigers that cannot be cared for humanely over the course of their lifespan, and thus are killed or illegally sold because they are no longer sources of profit, or killed to supply the illegal market for their hides, teeth, and bones.

- Defendant's ill-will toward C.B. began at least by 2010, after C.B. began publicly criticizing Defendant's well-known business practices of breeding big cats and exhibiting the cubs at his exotic animal park and in traveling shows for paid photos and petting encounters with members of the public.

- In approximately 2010, Defendant retaliated against C.B. by using the name and logo of her animal sanctuary in connection with his own cub-handling business practices.

- In January 2011, C.B. filed a civil lawsuit against Defendant for causes of action relating to his use of her sanctuary's name and logo. This lawsuit resulted in a $1 million judgment against Defendant, granted in February 2013. From February 2013 until the present, C.B. has maintained active litigation against Defendant in an attempt to collect the judgment.

- From February 2013 to the present, Defendant endeavored to hide money and assets so that they would not be subject to judgment collection by C.B. Some of these efforts involved creating successor business entities, fraudulently transferring business assets and property to other entities and parties, and fraudulently filing bankruptcies.

- The judgment and the costs of extended litigation caused Defendant and his exotic animal park to experience significant financial difficulties, which continued even after Defendant transferred ownership of the park in February 2016.

- Defendant made statements in person and on social media that C.B.'s litigation and judgment were causing the financial ruin of the zoo and that if C.B. "won," the zoo would close and the animals would be taken away. He also made statements indicating that C.B.'s death was the only way that the litigation would end and that the zoo and its animals would be saved.

- From at least November 2016 to approximately June 2018, Defendant illegally sold big cat cubs and adults in interstate commerce. Defendant falsified transfer forms for the animals to reflect that they were being "donated" rather than sold. Defendant demanded either cash payment or checks and money transfers made out to names other than his own, and he then laundered the money through the zoo's bank accounts, thereby hiding this income from judgment collection by C.B.

- In October 2017, Defendant killed five healthy adult tigers because they were not breeding; because his exotic animal park was at capacity for large predators; and because he anticipated the arrival of other big cats that would be a source of income in boarding fees.

- In November and December 2017, Defendant mobilized two separate plots to hire someone to kill C.B.

Given this evidence, the murder-for-hire counts and the wildlife violations constitute "two or more acts or transactions connected together or constituting parts of a common scheme or plan." *Johnson*, 130 F.3d at 1427. To prove murder-for-hire (Counts 1 and 2), the government must prove that Defendant had the intent to murder C.B. *See* 18 U.S.C. § 1958. The proof that Defendant was, in fact, engaging in wildlife crimes that C.B. alleged would flow from his cub-handling business is important circumstantial evidence of his motive, and therefore his intent, to murder C.B. Indeed, the jury could infer that Defendant's disproportionate vitriol towards C.B. was fueled by his knowledge that C.B. was correct in alleging that cub-handling resulted in the illegal killing and sale of endangered species and creating false documentation to conceal these acts. Moreover, the

5

evidence will show that Defendant believed that by murdering C.B. he could both (1) silence his most vocal critic and continue unchallenged with his business practices, and also (2) end the costly litigation that was threating the financial ruin of the zoo.

In addition, the seven years of litigation sponsored by C.B. are logically and factually connected to Defendant's motive to falsify documentation relating to animal sales. Defendant's income and the income of the zoo were subject to C.B.'s on-going efforts to collect the $1 million judgment. By falsifying documents to show that animals were donated rather than sold, and requiring either cash payments or checks made out to names other than his own, Defendant could avoid a paper-trail for a significant source of his income and thereby avoid forfeiting it to C.B. This practice was consistent with his other efforts to hide money and property from C.B.

Ultimately, the government expects the evidence to show that all of the crimes plotted or committed by Defendant – whether killing C.B., killing non-profitable tigers, selling tigers and lions, or falsifying documents relating to the sale of animals – were all designed to protect and sustain and promote – at any cost – the existence of the zoo, which Defendant considered to be his life's work.

For the foregoing reasons, joinder of all the counts alleged in the Superseding Indictment is proper under Federal Rule of Criminal Procedure 8(a), particularly in light of the broad construction given to the rule to allow liberal joinder. Indeed, the Court must consider whether a single trial in this matter would "enhance the efficiency of the judicial system." *Johnson*, 130 F.3d at 1427. At least seven of the government's anticipated witnesses will testify regarding both the murder-for-hire plots and one or more of the

wildlife crimes. Requiring separate trials will result in those seven witnesses being subpoenaed to appear at two trials, at twice the expense to the government; it will require the summoning and selection of two juries, at twice the expense to the government; and it will consume substantially more of the Court's time, as well as that of the federal prosecutors and federal public defenders. The efficiency of the judicial system would be significantly enhanced by a single trial against Defendant.

II. **Joinder of the murder-for-hire counts with the wildlife counts will not result in actual prejudice to Defendant that outweighs the expense and inconvenience of separate trials.**

> Aside from the provisions of Rule 8, a district court has discretion to sever under Fed.R.Crim.P. 14 if it appears defendant will be prejudiced by joinder of the offenses. Whether to grant severance under Rule 14 rests within the discretion of the district court and the burden on defendant to show an abuse of discretion in this context is a difficult one. Prejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is threatened or actually deprived.

*Johnson*, 130 F.3d at 1427 (internal citations and quotation marks omitted). "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect'. . . is sufficient to warrant severance." *Janus Indus.*, 48 F.3d at 1557 (internal quotation marks omitted). "[L]imiting instructions are ordinarily sufficient to cure potential prejudice," namely an instruction that each count of the indictment and its underlying evidence must be considered independently. *United States v. Thomas*, 849 F.3d 906, 912 (10th Cir. 2017) (internal quotation marks and citations omitted), *cert. denied*, 138 S. Ct. 315, 199 L. Ed. 2d 208 (2017). "In deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a single

trial of counts against the expense and inconvenience of separate trials." *Janus Indus.,* 48 F.3d at 1557 (internal quotation marks omitted).  Indeed, Defendant is obliged to show that "denial of severance would result in **actual prejudice** to his defense and that this prejudice would **outweigh** the expense and inconvenience of separate trials.  *United States v. Hutchinson*, 573 F.3d 1011, 1025 (10th Cir. 2009) (internal quotation marks and citations omitted) (emphasis added).

     Defendant contends that evidence that he killed tigers will unfairly prejudice the jury with respect to the murder-for-hire charges.  However, it is self-evident that any rational juror will be able to differentiate between the motives behind and impact of shooting an <u>animal</u> versus plotting to take a <u>human</u> life.  For precisely that reason, the former is a misdemeanor and the latter is a felony.  Similarly, it strains credulity to assert that if the jurors hear evidence that Defendant falsified forms relating to the sale of animals they would be naturally inclined to believe that Defendant had the propensity to plot a murder.  Regardless, any minimal spillover effect of presenting evidence relating to the different crimes can be cured with a limiting instruction from the Court.

     As discussed above, the question of judicial economy is significant in this matter, due in large part to the fact that the government anticipates calling at least seven witnesses who will testify regarding both murder-for-hire and the wildlife crimes.  Even assuming that the evidence on the wildlife crimes could prejudice the jury in its consideration of the murder-for-hire charges, that prejudice would not outweigh the expense and inconvenience of separate trials.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Sever should be denied.

        Respectfully submitted,

        ROBERT J. TROESTER
        First Assistant United States Attorney

        s/*Amanda Green*
        AMANDA GREEN
        Assistant U.S. Attorney
        OBA No. 19876
        210 W. Park Avenue, Suite 400
        Oklahoma City, Oklahoma  73102
        (405) 553-8700 (Office)
        (405) 553-8888 (Fax)
        Amanda.green@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of December, 2018, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Assistant Federal Public Defenders:
William P. Earley
Kyle E. Wackenheim

        *s/Amanda Green*
        AMANDA GREEN