IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CR-18-227-SLP |
| | ) |
| JOSEPH MALDONADO-PASSAGE, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court is Defendant's Motion to Sever [Doc. No. 38]. The motion is at issue. *See* Resp., Doc. No. 44; Suppl. to Resp., Doc. No. 48.[1] The parties have not requested an evidentiary hearing to provide testimonial support for their respective positions, and the Court does not sua sponte find that a hearing is necessary for it to reach its decision. The Court has reviewed both the Superseding Indictment [Doc. No. 24] and the representations made by the parties in their briefs [Doc. Nos. 38, 44, 48]. *See United States v. Garrison*, No. 14-cr-231-WJM, 2016 WL 8416756, at *1-2 (D. Colo. Sept. 2, 2016) (analyzing the Tenth Circuit's position regarding the issue of what materials may be reviewed by a district court regarding a severance request, which has split jurisdictions).

Defendant seeks to sever the first two counts of the Superseding Indictment [Doc. No. 24]—both of which allege the use of interstate commerce facilities for purposes of

---

[1] The Government requests that the Court deem its supplemental brief [Doc. No. 48]—filed one day after the deadline for the Government to file its response brief pursuant to Local Criminal Rule 12.1(b)—as having been filed timely. Defendant has not objected to the Government's request. The Government's request is GRANTED, and the Government's Supplement [Doc. No. 48] is deemed timely filed.

murder-for-hire in violation of 18 U.S.C. § 1958(a)—from the remaining 19 counts. The latter counts include five counts alleging criminal violations of the Endangered Species Act (the "ESA") through "taking" tigers by killing them, one count alleging a criminal violation of the ESA through the unlawful offering for sale of tiger cubs in interstate commerce, three counts alleging criminal violations of the ESA through unlawful sale of tiger cubs in interstate commerce, and ten counts alleging criminal violations of the Lacey Act through the submission of false records and false identification of wildlife sold in interstate commerce. *See* Superseding Indictment, Doc. No. 24. Defendant does not seek severance within the former two counts (i.e., of the first murder-for-hire count from the second murder-for-hire count) or within the latter 19 counts (e.g., of the ESA counts from the Lacey Act counts).[2]

## I. Background

The Superseding Indictment [Doc. No. 24] charges Defendant with 21 counts. The first two counts allege the use of interstate commerce facilities for purposes of murder-for-hire in violation of 18 U.S.C. § 1958(a). Roughly summarized, the Government contends that Defendant and a Florida resident, C.B., had a years-long dispute regarding care, exhibition, and breeding of tigers and lions that, in February 2013, resulted in a civil judgment against Defendant of more than $1 million. C.B. and related business entities

---

[2] The Court's references to the first two counts as "murder-for-hire counts" herein instead of the wordier "use of interstate commerce facilities for purposes of murder-for-hire counts" is not meant to diminish the Government's requirement of proving the use of an interstate commerce facility in relation to the alleged offenses, as well as each count's other elements.

have attempted to collect the judgment from Defendant and his related business entities ever since.[3]

In the first murder-for-hire count, the Government alleges that Defendant inquired of Individual 1 in November 2017 whether Individual 1 would travel to Florida to murder C.B. for a sum of money and that Defendant mailed a cell phone to another State in order to conceal Individual 1's involvement in their plot. The Government also alleges that Defendant gave $3,000 to Individual 1 in November 2017 in exchange for his agreement to travel to Florida and kill C.B.

In the second murder-for-hire count, the Government alleges that, from July 2016 to March 2018, Defendant asked Individual 2 if he could locate somebody to kill C.B. for payment. The Government further alleges that, in December 2017, Individual 2 introduced Defendant to an undercover FBI agent (posing as a "hit man") who discussed the murder of C.B. for payment. The Superseding Indictment continues: from December 2017 to March 2018, Defendant allegedly spoke with Individual 2 by phone regarding the murder of C.B.

The first five ESA counts allege that Defendant shot and killed five tigers in October 2017. The next ESA count alleges that Defendant offered two tiger cubs for sale in interstate commerce—also in October 2017. The final three ESA counts allege that Defendant sold a tiger in interstate commerce in each of November 2016, February 2018, and March 2018.

---

[3] For simplicity, the Court will use "Defendant" and "C.B." herein to refer both to the individuals and, at times, to their respective business entities as well.

The Lacey Act counts allege that Defendant made and submitted false records for, and falsely identified, wildlife transported or intended to be transported in interstate commerce in November 2016, December 2016 (two counts), June 2017, September 2017, February 2018, March 2018, and June 2018 (three counts).

**II.     Discussion and analysis**

Joinder of offenses against a single defendant is governed first by Federal Rule of Criminal Procedure 8(a):

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—*are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.*

Fed. R. Crim. P. 8(a) (emphasis added).  The Government has not argued that joinder between the murder-for-hire counts and the ESA/Lacey Act counts satisfies the first test (alleged offenses of the same or similar character) or second test (same act or transaction), so the Court need only consider the third test enunciated by Rule 8(a)—whether the alleged offenses are parts of a common scheme or plan.  *See* Resp. 5, Doc. No. 44 (arguing that "the murder-for-hire counts and the wildlife violations constitute two or more acts or transactions," and asserting that those "acts or transactions [are] connected together or constitut[e] parts of a common scheme or plan" (quotation marks and citation omitted)).

To "enhance the efficiency of the judicial system . . . [t]he Court should construe Rule 8 broadly to allow liberal joinder." *United States v. Bagby*, 696 F.3d 1074, 1086 (10th Cir. 2012) (quotation marks and citation omitted).  Still, "even the . . . requirements of Rule 8(a) are not infinitely elastic, and so cannot be stretched to cover offenses which are

4

discrete and dissimilar and which do not constitute parts of a common scheme or plan." *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003) (quotation marks and citations omitted). And joinder generally is not proper when the only connection between the counts is the defendant. *See United States v. Hawkins*, 776 F.3d 200, 209 (4th Cir. 2009). When misjoinder is shown, the Court must sever the counts. *See* 1A Charles Alan Wright, Arthur R. Miller et al., *Federal Practice and Procedure: Criminal* § 145 (4th ed. 2018).

Here, the Court finds that the allegations made against Defendant are adequately alleged as parts of or connected to a common scheme or plan. The Government alleges that both the murder-for-fire offenses and the ESA/Lacey Act offenses resulted from the same contentious and litigious relationship between Defendant and C.B. According to the Government, the civil judgment against Defendant was the motive for the alleged murder-for-hire actions against C.B., and a long-running disagreement existed between Defendant and C.B. regarding Defendant's treatment of animals that included the actions alleged in the ESA/Lacey Act counts. The practices opposed by C.B. that led to her criticisms of Defendant—in turn resulting in Defendant's alleged murder-for-hire actions—are the same types of practices which the Government alleges Defendant engaged in that violated the ESA and the Lacy Act. The Government also ties the allegations together by asserting that the actions which violated the ESA/Lacey Act led to C.B.'s criticism of Defendant, which led to Defendant's actions resulting in the civil judgment against him, which in turn caused him financial difficulties that he attempted to remedy through the murder-for-hire plot.

Defendant's alleged falsification of "transfer forms for the animals to reflect they were being 'donated' rather than sold" and demands that "either cash payment or checks

and money transfers [be] made out to names other than his own[ so he could] launder[] the money through [his] zoo's bank accounts, thereby hiding the income from judgment collection by C.B." also connect the Lacey Act counts and murder-for-hire counts as part of a common scheme or plan to avoid having to pay the civil judgment obtained by C.B. That is, if the Government's allegations are correct, Defendant falsified paperwork in violation of the Lacey Act to avoid having additional assets that could be seized by C.B., and Defendant sought to have C.B. killed to end her judgment-collection efforts.

Moreover, the actions alleged by the Government in all the counts asserted are from the July 2016 to June 2018 period, with all or most of the actions allegedly supporting the counts occurring at or near Defendant's zoo attraction in Wynnewood, Oklahoma. And the Government alleges that a common motive existed for all of the counts alleged—the protection and preservation of Defendant's zoo attraction from dissolution or financial ruin caused by C.B.'s judgment or by enforcement of federal laws against him.

Finally, the Government anticipates that at least seven witnesses who testify regarding the murder-for-hire counts will also testify regarding the ESA/Lacey Act counts. Two trials would cost both the Government and the court system more resources that would be employed in a single trial through repetitious witnesses and repetitious presentation of evidence relevant to many (or all) asserted counts. The Court therefore determines that the murder-for-hire counts and the ESA/Lacey Act counts asserted by the Government and against Defendant were properly joined under Rule 8(a). In reaching its decision, the Court is mindful of the Tenth Circuit's instruction to "construe Rule 8 broadly to allow liberal joinder." *Bagby*, 696 F.3d at 1086 (quotation marks and citation omitted).

Having found joinder proper under Rule 8(a), the Court must consider whether joinder of the counts "appears to prejudice [D]efendant." Fed. R. Crim. P. 14(a); *see United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997). "Prejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is threatened or actually deprived." *Johnson*, 130 F.3d at 1427. But Rule 14 does not require the Court "to sever the counts simply because . . . a defendant may have a better chance for acquittal by separate trials." *United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992) (quotation marks and citations omitted). And—in conducting a Rule 14 analysis, the Court is to "weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *Id.* at 1456.

Here, the Court finds that any chance of a propensity conviction—either on the ESA and Lacey Act counts due to evidence of murder-for-hire plots or vice versa—can be adequately guarded against by limiting instructions from the Court. "Limiting instructions are ordinarily sufficient to cure potential prejudice," and Defendant makes no convincing argument why this general approach should not apply here. *United States v. Thomas*, 849 F.3d 906, 912 (10th Cir. 2017) (quotation marks and citation omitted).

Nor does Defendant indicate that he seeks to testify regarding some of the counts against him but not testify regarding others, which could sway the relevant analysis toward severance. *See Hollis*, 971 F.2d at 1457. Finally, although testimony and evidence presented by the Government at trial may not otherwise be admissible against Defendant on both the murder-for-hire counts and the ESA/Lacey Act counts, it is apparent from the allegations and representations made by the Government that significant overlap of

evidence and testimony will exist. Performing the balancing required of the Court, as indicated in *Hollis*, 971 F.2d at 1456, the Court finds that any prejudice to Defendant not cured by limiting instructions from the Court does not outweigh the expense and inconvenience to all parties and the court system caused by separate trials.

### III. Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Sever [Doc. No. 38] is DENIED as indicated herein.

IT IS SO ORDERED this 12th day of February, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE