IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-18-227-SLP |
| | ) | |
| JOSEPH MALDONADO-PASSAGE, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is the Government's Motion for Protective Order Pertaining to Testimony of FBI Undercover Employee at Trial [Doc. No. 78]. It is at issue. *See* Resp., Doc. No. 92.

The Superseding Indictment [Doc. No. 24] charges Defendant with 21 offenses. Two counts allege the use of interstate commerce facilities for purposes of murder-for-hire in violation of 18 U.S.C. § 1958(a).[1] Roughly summarized, the Government contends that Defendant and a Florida resident, C.B., had a years-long dispute regarding care, exhibition, and breeding of big cats that resulted in a civil judgment against Defendant of more than $1 million. C.B. and related business entities have attempted to collect the judgment from Defendant and his related business entities since.

---

[1] The Court's references to these counts as "murder-for-hire counts" herein instead of the wordier "use of interstate commerce facilities for purposes of murder-for-hire counts" is not meant to diminish the Government's requirement of proving the use of an interstate commerce facility in relation to the alleged offenses, as well as each count's other elements.

In one of the two murder-for-hire counts, the Government alleges that from July 2016 to March 2018, Defendant asked Individual 2 if he could locate somebody to kill C.B. for payment.  The Government further alleges that, in December 2017, Individual 2 offered to introduce and then introduced Defendant to an undercover FBI agent (posing as a "hit man") who discussed with Defendant the murder of C.B. for payment.

## I.   The Government's request that testimony of its undercover agent be given via pseudonym

The undercover agent described in the Superseding Indictment will testify at Defendant's trial.  The Government asks that certain limitations be imposed by the Court regarding his testimony—namely:

> 1.   That the [undercover agent] be allowed to testify under his undercover pseudonym when testifying at trial, without disclosing public[ly] the true name of the [undercover agent];
> 2.   That the defense shall be prohibited from asking questions seeking to discover the true name or other personal identification information from the [undercover agent];
> 3.   That the [undercover agent] be permitted to use a non-public entrance/exit to the courthouse and the courtroom;
> 4.   That the Court will prohibit "courtroom sketches" or other attempts to describe the appearance of the [undercover agent] by any party, other witness, or people attending the trial;
> 5.   That the defense shall be prohibited from inquiring into other undercover investigations conducted by the [undercover agent], either presently or in the past; and
> 6.   That the defense shall be prohibited from asking questions or otherwise seeking information concerning the FBI's undercover investigative techniques or training program.

Mot. 2-3, Doc. No. 78.  The Government's basis for its request is to protect the identity of the undercover officer and his family, as well as the continued viability of his undercover

work, including in other investigations (not related to Defendant) within the geographic territory of the Western District of Oklahoma and elsewhere.

The relevant criteria for evaluating the Government's request is provided by *United States v. Gutierrez de Lopez*, 761 F.3d 1123 (10th Cir. 2014). There, the Tenth Circuit indicated that whether the Confrontation Clause of the U.S. Constitution is violated by anonymous testimony is determined "by asking (i) whether the government has demonstrated a threat and if so, (ii) whether anonymous testimony [will] deprive[] the defendant of an opportunity for effective cross-examination." *Id.* at 1140. The threat demonstrated need not be from the defendant in the proceeding (and, here, the Government does not allege any danger has been threatened against the undercover agent by Defendant). *See id.* at 1140-41 (collecting cases). However, "a generalized statement about danger— such as anyone who testifies against one of a gang's members faces danger from that gang—[is] insufficient to show that a threat against a witness [is] actual and not a result of conjecture." *Id.* at 1141 (quotation marks omitted) (quoting *United States v. Ramos-Cruz*, 667 F.3d 487, 501 (4th Cir. 2012)).

Relevantly, in *Gutierrez de Lopez*, the Tenth Circuit determined that the district court had abused its discretion in allowing confidential informants to testify anonymously because the lower court "relied on cursory generalized statements that anyone who cooperates in a case with cartel connections faces danger." *Id.* at 1145 (quotation marks and citation omitted). Although the Tenth Circuit eventually found the district court's error to be harmless, the Tenth Circuit faulted the government for "fail[ing] to support [its] generalized assertions . . . . that aliases [were] necessary to protect the witnesses from

potential retaliation. . . . with sealed affidavits or any other specific evidence of a threat." *Id.* (quotation marks and citations omitted). The failure to submit such evidence, the appellate court said "fail[ed] to pass muster under the Confrontation Clause." *Id.*

Here, the same scenario exists. The Government has failed to present any evidence by which the Court could determine that the Government has adequately shown the requested anonymity and secrecy are justified. Absent such a showing, the Court DENIES the Government's request for the imposition of certain conditions on the testimony of the undercover agent at trial, without prejudice to the Government resubmitting a motion compliant with the Tenth Circuit's *Gutierrez de Lopez* instructions.

Because the Court finds that the Government has failed to meet the first requirement for anonymous testimony under *Gutierrez de Lopez*, the Court does not reach the question of whether the Government has met the second requirement—ensuring that Defendant "[is] not deprived of an opportunity for effective cross-examination of the Government's [undercover agent]." *Id.* at 1146. If the Government re-urges its request for testimony via pseudonym, the Government should address whether information has been provided to Defendant's counsel to ensure the ability for adequate cross-examination, as described in *Gutierrez de Lopez. See id.* at 1141-43, 1146-47.

## II.   Defendant's request to unseal filings related to the issue addressed herein

In its Application to File Under Seal [Doc. No. 76]—in which it sought to file its protective order motion under seal—the Government indicated that matters related to whether the undercover officer could testify pursuant to certain conditions should be sealed

"to protect the identity and security of the [FBI] undercover employee . . . who will be a witness at trial in this matter," as well as "to assure the security and safety of the [undercover agent] and his family, [to] preserve the integrity of other undercover investigations, and [to preserve the integrity of] the FBI's undercover investigative techniques and training program." Appl. 1-2, Doc. No. 76. Defendant now asks the Court to unseal filings regarding the issue addressed in this Order.

Neither the Government's Motion [Doc. No. 78], Defendant's Response thereto [Doc. No. 92], nor this Order contains information which would endanger the interests identified by the Government in its sealing application. None of the filings related to this issue include the undercover agent's name, his undercover alias, or any identifying information for him except his involvement in the investigation of Defendant (which is already publicly available in the Superseding Indictment).

Having reviewed the content of the to-date filings regarding the testimony of the undercover agent, none of the authorities cited in the Government's Application to File Under Seal [Doc. No. 76] support the filings remaining under seal. *See, e.g.*, *United States v. McVeigh*, 119 F.3d 806, 812-13 (10th Cir. 1997) (indicating that court documents may be sealed when "closure is essential to preserve higher values and is necessary to serve that interest" as compared to an evaluation of "(1) whether the document is one which has historically been open to inspection by the press and the public[,] and (2) whether public access plays a significant positive role in the functioning of the particular process in question" (quotation marks omitted)); *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (indicating that a district court "may seal documents if the public's right of

access is outweighed by competing interests" (quotation marks and citation omitted)). Accordingly, the Court directs that filings related to this issue be unsealed.[2]

## III.  Conclusion

IT IS THEREFORE ORDERED that the Government's Motion for Protective Order Pertaining to Testimony of FBI Undercover Employee at Trial [Doc. No. 78] is DENIED as indicated herein without prejudice to the Government re-urging its request with appropriate support.

IT IS FURTHER ORDERED that Defendant's request to unseal (i) the Government's Motion [Doc. No. 78], (ii) Defendant's Response thereto [Doc. No. 92] and (iii) this Order is GRANTED as indicated herein.  The following filings should be unsealed as well: the Government's Application to File Under Seal [Doc. No. 76] and the Court's Order granting the Government's Application [Doc. No. 77].  The Clerk of the Court is directed to unseal these filings.

IT IS SO ORDERED this 14th day of March, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[2] This determination does not mean that a re-urged motion with additional information and support from the Government could not be filed under seal.  Indeed, it is likely that a motion including, e.g., an affidavit regarding specific threats or specific law-enforcement procedures used by undercover agents, would qualify for filed-under-seal status.