IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,                )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )            Case No. CR-18-227-SLP
                                         )
JOSEPH MALDONADO-PASSAGE,                )
                                         )
            Defendant.                   )

**<u>COURT'S INSTRUCTIONS TO THE JURY</u>**

## INSTRUCTION NO. 1.

## <u>INTRODUCTION TO FINAL INSTRUCTIONS</u>

Members of the jury:

In any jury trial there are, in effect, two judges.  I am one of the judges, you are the other.  I am the judge of the law.  You, as jurors, are the judges of the facts.  I presided over the trial and decided what evidence was proper for your consideration.  It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and determining the believability of witnesses.  Then I will give you specific rules of law that apply to this particular case.  Finally, I will explain the procedures that you should follow in your deliberations, and the possible verdicts you may return.  These instructions will be given to you for use in the jury room, so you need not take notes.

**INSTRUCTION NO. 2.**

**<u>DUTY TO FOLLOW INSTRUCTIONS</u>**

You, as jurors, are the judges of the facts.  But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you.  You must not substitute or follow your own notion or opinion as to what the law is our ought to be.

It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be.  That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy.  That was the promise you made and the oath you took.

## INSTRUCTION NO. 3.

## SUPERSEDING INDICTMENT

The Superseding Indictment by which the defendant is charged reads as follows:

At all times relevant to this Superseding Indictment:

### Introduction

1.      Defendant **JOSEPH MALDONADO-PASSAGE** was a resident of the Western District of Oklahoma.  He owned and/or operated an exotic animal park in Wynnewood, Oklahoma.

2.      C.B. was a resident of the state of Florida.

3.      **MALDONADO-PASSAGE** and C.B. had an ongoing dispute regarding the proper care, exhibition, and breeding practices for big cats, such as tigers and lions.  Until 2011, the dispute was carried on primarily through traditional and social media.

4.      In or about January 2011, C.B. and her related business entities filed a civil lawsuit against **MALDONADO-PASSAGE** and his related business entities.

5.      In or about February 2013, the civil litigation resulted in the court entering a money judgment in excess of $1 million against **MALDONADO-PASSAGE**.  Since that time, and continuing until the present, C.B. and her related business entities have been attempting to collect on the money judgment against **MALDONADO-PASSAGE** and his related business entities and their successor entities.

6.      Beginning at least by January 2012, **MALDONADO-PASSAGE** posted content online, including on Facebook and YouTube websites, containing threats of violence against C.B.

**Laws Pertaining to Wildlife**

7.     The Endangered Species Act ("ESA") provided a legal framework for the protection of endangered and threatened wildlife found within the United States.  The Secretary of the Interior determined which species were endangered or threatened under the ESA.  The Secretary of the Interior delegated the authority to administer endangered and threatened species permit matters to the Director of the U.S. Fish and Wildlife Service.  The Service's Division of Management Authority administered the permit program for the import or export of listed species, the sale or offer for sale in interstate and foreign commerce for non-native listed species, and the "taking" of non-native listed wildlife within the United States.

8.     All species and subspecies of tigers, *Panthera tigris*, were listed as endangered under the ESA.  50 C.F.R. § 17.11.

9.     All species of lemurs, *Lemuridae*, were listed as endangered under the ESA.  50 C.F.R. § 17.11.

10.     Effective January 22, 2016, one subspecies of lion, *Panthera leo leo*, was listed as endangered under the ESA.  50 C.F.R. § 17.11.  Another subspecies of lion, *Panthera leo melanochaita*, was listed as threatened under the ESA.  50 C.F.R. § 17.11.  The prohibitions applicable to endangered species were also applicable to *Panthera leo melanochaita*.  50 C.F.R. §§ 17.40(r), 17.31(a), and 17.21.

11.     The ESA makes it illegal to "take" any endangered species of wildlife within the United States.  16 U.S.C. § 1538(a)(1)(B).  "Take" is defined as "harass, harm, pursue,

hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

12.     The ESA makes it illegal to "sell or offer for sale in interstate or foreign commerce" any endangered species of wildlife. 16 U.S.C. § 1538(a)(1)(F).

13.     The ESA makes it illegal for "any person subject to the jurisdiction of the United States to attempt to commit, solicit another to commit, or cause to be committed, any offense" under the ESA. 16 U.S.C. § 1538(g).

14.     A person could become authorized to conduct activities otherwise prohibited under the ESA, such as taking and sales in interstate commerce, only if that person either obtained a specific permit from the U.S. Fish and Wildlife Service or became registered under the Service's Captive-Bred Wildlife (CBW) regulations. Issuance of an ESA permit and CBW registration require the applicant to demonstrate that his/her activities will enhance the propagation or survival of the species. *See* 50 C.F.R. § 17.21.

15.     Effective May 5, 2016, the CBW regulations applied to all tigers, including inter-subspecific crossed or "generic" tigers.

16.     The Lacey Act makes it illegal for "any person to make or submit any false record, account, or label for, or any false identification of, any fish, wildlife, or plant which has been, or is intended to be . . . transported in interstate or foreign commerce." 16 U.S.C. § 3372(d)(2).

17.     **MALDONADO-PASSAGE** did not obtain any ESA permits from the U.S. Fish and Wildlife Service and was not registered under the CBW regulations.

### Count 1
### (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire)

18.     The Federal Grand Jury incorporates paragraphs 1-6 by reference.

19.     At least by early November 2017, **MALDONADO-PASSAGE** inquired of Individual 1 whether Individual 1 would travel to Florida to murder C.B. in exchange for a sum of money.  Individual 1 told **MALDONADO-PASSAGE** that he would travel to Florida to murder C.B. in exchange for a sum of money.

20.     On or about November 6, 2017, **MALDONADO-PASSAGE** caused Individual 1 to travel from the Western District of Oklahoma to Dallas, Texas, to obtain a fake identification card for use in a proposed plot for Individual 1 to travel to Florida to murder C.B.

21.     On or about November 25, 2017, **MALDONADO-PASSAGE** used the U.S. Postal Service to mail Individual 1's cell phone from the Western District of Oklahoma to Nevada to conceal Individual 1's involvement in a proposed plot to murder C.B. in Florida.

22.     On or about November 25, 2017, in the Western District of Oklahoma, **MALDONADO-PASSAGE** gave Individual 1 approximately $3,000 in cash in exchange for Individual 1's agreement to travel to Florida to murder C.B.  **MALDONADO-PASSAGE** had obtained the cash the previous day from the sale of a big cat. **MALDONADO-PASSAGE** promised to pay Individual 1 thousands of dollars more after Individual 1 murdered C.B.

23.     **MALDONADO-PASSAGE** agreed with Individual 1 that Individual 1 would travel from the Western District of Oklahoma to South Carolina, and then to Florida, to murder C.B.

24.     On or about November 26, 2017, Individual 1 traveled from the Western District of Oklahoma to South Carolina.

25.     No physical harm came to C.B. as a result of **MALDONADO-PASSAGE's** proposed plot for her murder.

26.     In or about November 2017, in the Western District of Oklahoma and elsewhere,

-------------------------------- **JOSEPH MALDONADO-PASSAGE,**
                                 **a/k/a Joseph Allen Maldonado,**
                                 **a/k/a Joseph Allen Schreibvogel,**
                                 **a/k/a "Joe Exotic,"** ----------------------------------------------

caused another person to travel in interstate commerce, used and caused another person to use the mail, and used and caused another person to use any facility of interstate commerce, with intent that the murder of C.B. be committed in violation of the laws of the state of Oklahoma and the state of Florida as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

All in violation of Title 18, United States Code, Section 1958(a), and Title 18, United States Code, Section 2.

## Count 2
### (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire)

27.     The Federal Grand Jury incorporates paragraphs 1-6 by reference.

28.     Beginning in approximately July 2016, and continuing through approximately March 2018, **MALDONADO-PASSAGE** repeatedly asked Individual 2 whether Individual 2 could find someone to murder C.B. in exchange for a sum of money.

29.     On or about December 5, 2017, Individual 2 called from his cell phone and spoke with **MALDONADO-PASSAGE** on his cell phone.  Individual 2 offered to introduce **MALDONADO-PASSAGE** to a person who would be willing to murder C.B. in exchange for a sum of money.  **MALDONADO-PASSAGE** agreed to the meeting.

30.     On or about December 8, 2017, Individual 2 introduced **MALDONADO-PASSAGE** to an undercover FBI agent, and together the three individuals discussed the details of **MALDONADO-PASSAGE's** proposed plot to murder C.B.

31.     On various dates from December 2017 to March 2018, **MALDONADO-PASSAGE** used his cell phone to speak with Individual 2 on his cell phone about using the undercover FBI agent to murder C.B.

32.     No physical harm came to C.B. as a result of **MALDONADO-PASSAGE's** proposed plot for her murder.

33.     Beginning at least by December 5, 2017, and continuing through about March 2018, in the Western District of Oklahoma,



-------------------------------- **JOSEPH MALDONADO-PASSAGE,**
                                   **a/k/a Joseph Allen Maldonado,**
                                   **a/k/a Joseph Allen Schreibvogel,**
                                   **a/k/a "Joe Exotic,"** ----------------------------------------------

used and caused another person to use any facility of interstate commerce, with intent that the murder of C.B. be committed in violation of the laws of the state of Oklahoma and the

state of Florida as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value.

All in violation of Title 18, United States Code, Section 1958(a), and Title 18, United States Code, Section 2.

**Counts 3-7**
**(Violation of the Endangered Species Act)**

34.     The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

35.     In or around October 2017, **MALDONADO-PASSAGE** anticipated the arrival of certain big cats that were to be boarded for a fee at the exotic animal park. **MALDONADO-PASSAGE** needed empty cages to house the big cats.

36.     In or around October 2017, in the Western District of Oklahoma,

-------------------------------- **JOSEPH MALDONADO-PASSAGE,**
                    **a/k/a Joseph Allen Maldonado,**
                    **a/k/a Joseph Allen Schreibvogel,**
                    **a/k/a "Joe Exotic," ----------------------------------------------**

knowingly and unlawfully took the following endangered species of wildlife, by shooting and killing them:

| Count | Endangered Species |
|-------|--------------------|
| 3 | Tiger (*Panthera tigris*) #1 |
| 4 | Tiger (*Panthera tigris*) #2 |
| 5 | Tiger (*Panthera tigris*) #3 |
| 6 | Tiger (*Panthera tigris*) #4 |
| 7 | Tiger (*Panthera tigris*) #5 |

All in violation of Title 16, United States Code, Section 1538(a)(1)(B), and Title 18, United States Code, Section 2.

**Count 8**
**(Violation of the Endangered Species Act)**

37.     The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

38.     On or about October 30, 2017, in the Western District of Oklahoma and elsewhere,

------------------------------ **JOSEPH MALDONADO-PASSAGE,**
                              **a/k/a Joseph Allen Maldonado,**
                              **a/k/a Joseph Allen Schreibvogel,**
                              **a/k/a "Joe Exotic,"** ----------------------------------------------

knowingly and unlawfully offered for sale in interstate commerce endangered species of wildlife, namely two tiger cubs (*Panthera tigris*).

All in violation of Title 16, United States Code, Section 1538(a)(1)(F), and Title 18, United States Code, Section 2.

**Counts 9-11**
**(Violation of the Endangered Species Act)**

39.     The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

40.     On or about the following dates, in the Western District of Oklahoma and elsewhere,

------------------------------ **JOSEPH MALDONADO-PASSAGE,**
                              **a/k/a Joseph Allen Maldonado,**
                              **a/k/a Joseph Allen Schreibvogel,**
                              **a/k/a "Joe Exotic,"** ----------------------------------------------

knowingly and unlawfully sold in interstate commerce from the Western District of Oklahoma to the following destinations, the following endangered species of wildlife:

11

| Count | Date | Animal | Recipient/ Destination |
|-------|------|--------|------------------------|
| 9 | 11/16/16 | Tiger, male, cub | Brown Zoo, Illinois |
| 10 | 2/3/18 | Tiger, female, 11 weeks old | T.S., Indiana |
| 11 | 3/6/18 | Tiger, female, 6 weeks old | Brown's Oakridge Zoo, Illinois |

All in violation of Title 16, United States Code, Section 1538(a)(1)(F), and Title 18, United States Code, Section 2.

**Counts 12, 15-20**
**(Violation of the Lacey Act: False Labeling of Wildlife)**

41.     The Federal Grand Jury incorporates paragraphs 1 and 7-17 by reference.

42.     On or about the dates listed below, in the Western District of Oklahoma and elsewhere,



------------------------------- **JOSEPH MALDONADO-PASSAGE,**
                                **a/k/a Joseph Allen Maldonado,**
                                **a/k/a Joseph Allen Schreibvogel,**
                                **a/k/a "Joe Exotic,"** -----------------------------------------------

knowingly made and submitted and caused to be made and submitted a false record, account, and label for, and a false identification of the following wildlife with a market value greater than $350, that was transported and that was intended to be transported in interstate commerce.  Specifically, **MALDONADO-PASSAGE** designated and caused to be designated on delivery forms and Certificates of Veterinary Inspection (CVI) that the wildlife was being donated to the recipient or transported for exhibition only, when he knew that, in fact, the wildlife was being sold in interstate commerce:

| Count | Date | Animal | False Form | Recipient/ Destination |
|---|---|---|---|---|
| 12 | 11/16/16 | Tiger, male, cub | Delivery form | Brown Zoo, Illinois |
| . . . . | | | | |
| 15 | 6/11/17 | Lion, white female, 6 weeks old | Delivery form | T.S., Indiana |
| 16 | 2/3/18 | Tiger, female, 11 weeks old | Delivery form | T.S., Indiana |
| 17 | 3/6/18 | Tiger, female, 6 weeks old | Delivery form | Brown's Oakridge Zoo, Illinois |
| 18 | 6/12/18 | African lion, male, 8 years old<br>African lion, female, 8 years old | CVI | Animal Haven Zoo, Wisconsin |
| 19 | 6/13/18 | Lion, male, 5 years old<br>Lion, female, 7 years old | Delivery form | Animal Haven Zoo, Wisconsin |
| 20 | 6/18/18 | Lion, male, 2 weeks old<br>Lion, male, adult, "Moses" | Delivery form | Branson Wild World, Missouri |

All in violation of Title 16, United States Code, Section 3372(d)(2), and Section 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

## Count 21
### (Violation of the Lacey Act: False Labeling of Wildlife)

43.     The Federal Grand Jury incorporates paragraphs 1 and 7-16 by reference.

44.     On or about September 29, 2017, in the Western District of Oklahoma and elsewhere,

------------------------------ **JOSEPH MALDONADO-PASSAGE,**
                              **a/k/a Joseph Allen Maldonado,**
                              **a/k/a Joseph Allen Schreibvogel,**
                              **a/k/a "Joe Exotic,"** -----------------------------------------------

knowingly made and submitted a false record, account, and label for, and a false identification of wildlife, namely a 10-week-old female lemur, with a market value greater than $350, in that **MALDONADO-PASSAGE** created a delivery form showing that the lemur was donated from himself to Ringling Animal Care, in Ringling, Oklahoma, when he knew that, in fact, the lemur had been sold and transported in interstate commerce.

All in violation of Title 16, United States Code, Section 3372(d)(2), and Section 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

## INSTRUCTION NO. 4.

### PRESUMPTION OF INNOCENCE—
### BURDEN OF PROOF—REASONABLE DOUBT

The government has the burden of proving the defendant guilty beyond a reasonable doubt.  The law does not require a defendant to prove his innocence or produce any evidence at all.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are few things in this world that we know with absolute certainty, and in criminal cases, the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.  A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.  If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crimes charged, you must find him guilty.  If, on the other hand, you think there is a real possibility that the defendant is not guilty, you must give the defendant the benefit of the doubt and find the defendant not guilty.

## INSTRUCTION NO. 5.

## <u>SUPERSEDING INDICTMENT IS NOT EVIDENCE</u>

An indictment—or, in this case, the Superseding Indictment—is a formal method of accusing a defendant of a crime.  It is not evidence of any kind against a defendant and does not create any presumption or permit any inference of guilt.  It is merely a charge or accusation—nothing more and nothing less.

## INSTRUCTION NO. 6.

### ON OR ABOUT A PARTICULAR DATE

You will note that the Superseding Indictment charges that the crimes were committed on or about certain dates. The government must prove beyond a reasonable doubt that the defendant committed the crime or crimes reasonably near the date or dates charged.

**INSTRUCTION NO. 7.**

**<u>NOTE TAKING BY JURORS</u>**

You have been permitted to take notes during the testimony of this case.  If you have done so, you may refer to your notes during deliberations and discuss the contents of them with other jurors.  In your deliberations, give no more or no less weight to the views of a fellow juror just because that juror did or did not take notes.  Your notes are not official transcripts but are simply aids to your memory.  It is the testimony from the witness stand that must be the basis of your determination of the facts and, ultimately, your verdict in the case.

## INSTRUCTION NO. 8.

## **EVIDENCE—DEFINED**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyer's statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

During the trial, to the extent that I did not let you hear the answers to some of the questions that the lawyers asked, or ruled that you could not see some of the exhibits that the lawyers wanted you to see, or ordered you to disregard things that you saw or heard, or struck things from the record, you must completely ignore all of those things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

## INSTRUCTION NO. 9.

## <u>EVIDENCE—DIRECT AND CIRCUMSTANTIAL—INFERENCES</u>

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

## INSTRUCTION NO. 10.

## <u>TRANSCRIPTS OF RECORDED CONVERSATIONS</u>

During this trial, you have heard sound and video recordings of certain conversations.  These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence.  You also saw transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence.  They were only as a guide to help you follow what was being said.  The recordings themselves are the evidence.  If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read.  If you could not hear or understand certain parts of the recordings, you must ignore the transcripts as far as those parts are concerned.

## INSTRUCTION NO. 11.

## <u>SIMILAR ACTS</u>

You have heard evidence of other crimes, acts, and wrongs engaged in by the defendant.  You may consider that evidence only as it bears on the defendant's motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident, and for no other purpose.  Of course, the fact that the defendant may have previously committed other crimes, acts, and wrongs does not mean that the defendant necessarily committed the act charged in this case.

## INSTRUCTION NO. 12.

## <u>CREDIBILITY OF WITNESSES</u>

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt.  In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses who testified in this case, including the defendant.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.

In making that decision, I suggest that you ask yourself a few questions:  Did the witness impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome in this case?  Did the witness have any relationship with either the government or the defense?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he/she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?

When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail.  And you should

keep in mind that innocent mis-recollection—like failure of recollection—is not uncommon.

The testimony of the defendant should be weighed and his credibility evaluated in the same way as that of any other witness.

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

**INSTRUCTION NO. 13.**

**<u>LAW ENFORCEMENT WITNESSES</u>**

You have heard the testimony of law enforcement officials.  The fact that a witness may be employed by the federal government as a law enforcement official does not mean that his/her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness, and it is within your province to give that testimony whatever weight, if any, you find it deserves.

## INSTRUCTION NO. 14.

## **EXPERT WITNESSES**

During the trial, you heard the testimony of persons with scientific, technical, or other specialized knowledge that may assist you in understanding the evidence or in determining a fact in issue.  A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion.  You should consider opinion testimony just as you consider other testimony in this trial.  Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

## INSTRUCTION NO. 15.

## **IMPEACHMENT BY PRIOR INCONSISTENCIES**

You have heard the testimony of certain witnesses who, before this trial, made statements that may be different from their testimony here in court.

These earlier statements were brought to your attention only to help you decide how believable the witnesses' testimony in this trial was.  You cannot use them as proof of anything else.  You can only use them as one way of evaluating their testimony here in court.

## INSTRUCTION NO. 16.

## IMPEACHMENT BY PRIOR CONVICTION

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted either of a felony, that is, of a crime punishable by imprisonment for a term of years or of a crime of dishonesty or false statement.  A prior conviction does not mean that a witness is not qualified to testify; it is merely one circumstance that you may consider in determining the credibility of the witness.  You may decide how much weight to give any prior felony conviction or any crime of dishonesty that was used to impeach a witness.

## INSTRUCTION NO. 17.

## <u>INFORMANT</u>

You have heard testimony from an informant for the government.  An informant is someone who provides evidence against someone else for a personal reason or advantage. The testimony of an informant alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt, even though not corroborated or supported by other evidence.

You must examine and weigh an informant's testimony with greater care than the testimony of an ordinary witness.  You must determine whether the informant's testimony has been affected by self-interest, by an agreement he/she has with the government, by his/her own interest in the outcome of the case, or by prejudice against the defendant.

You should not convict a defendant based on the unsupported testimony of an informant, unless you believe the unsupported testimony beyond a reasonable doubt.

## INSTRUCTION NO. 18.

## <u>INVESTIGATIVE TECHNIQUES</u>

You have heard testimony as to the manner in which the government conducted its investigation in this case, including certain investigative methods or techniques that were used and certain investigative methods or techniques that were not used.  In attempting to prove its case, the government is under no obligation to use all of the investigative methods that are available to it or to use any particular method.

The question is whether the evidence presented is sufficient to convince you beyond a reasonable doubt of a defendant's guilt.

**INSTRUCTION NO. 19.**

**COUNTS 1 AND 2—USE OF INTERSTATE COMMERCE FACILITIES
IN THE COMMISSION OF MURDER-FOR-HIRE
18 U.S.C. § 1958(a)**

The defendant has been charged with two counts of violating 18 U.S.C. § 1958(a).

To find the defendant guilty of this crime, you must be convinced that the government has

proved each of the following beyond a reasonable doubt:

> **First:** the defendant either (i) traveled in or caused another person to travel in interstate commerce or (ii) used or caused another person to use the mail or any facility of interstate commerce;
>
> **Second:** that the defendant did so with the intent that a murder be committed in violation of the laws of any State or of the United States; and
>
> **Third:** that the murder in question was intended to be committed either (i) as consideration for the receipt of anything of pecuniary value or (ii) as consideration for a promise or agreement to pay anything of pecuniary value.

Regarding the first element, you are instructed that "interstate commerce" means

commerce or travel between one state of the United States and another state of the United

States, and that "commerce" includes travel, trade, transportation, and communication.

You are further instructed that a cellular telephone is a "facility of interstate commerce."

Regarding the second element, you are instructed that intent ordinarily must not be

proved directly, because there is no way of fathoming or scrutinizing the operations of the

human mind.   But you may infer the defendant's intent from the surrounding

circumstances.   You may consider any statement made and act done or omitted by the

defendant, and all other facts and circumstances in evidence which indicate the defendant's

state of mind at the time he is alleged to have committed the crime charged.  You may consider it reasonable to draw the inference and find that a person intends the natural probable consequences of acts knowingly done or knowingly omitted.

Regarding the third element, you are instructed that "anything of pecuniary value" means anything of value in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage.  You are further instructed that "consideration" means something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee or that which motivates a person to do something.

## INSTRUCTION NO. 20.

## COUNTS 3 THROUGH 7—ILLEGAL TAKING
## (ENDANGERED SPECIES ACT)
## 16 U.S.C. § 1538(a)(1)(B)

The defendant has been charged with five counts of violating 16 U.S.C. § 1538(a)(1)(B).  To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**First:**    that the defendant did take an endangered species within the United States;

**Second:**    that the defendant acted knowingly;

**Third:**    that the animal was the endangered species alleged by the government;

**Fourth:**    that the defendant knew the animal was a *panthera tigris* (tiger); and

**Fifth:**    that the defendant did not have a permit to take the animal.

Regarding the first and third elements, you are instructed that *panthera tigris* (tiger) is an endangered species.

Regarding the first and fifth elements, you are instructed that to "take" means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct.

Regarding the second element, you are instructed that "knowingly" means that the act was done voluntarily and intentionally, and not because of mistake or accident.  You are further instructed that the government need not prove the defendant intended to violate the Endangered Species Act if he intended to perform the act prohibited thereby.

33

**INSTRUCTION NO. 21.**

**COUNT 8—ILLEGAL OFFER FOR SALE
(ENDANGERED SPECIES ACT)
16 U.S.C. § 1538(a)(1)(F)**

The defendant has been charged with one count of violating 16 U.S.C. § 1538(a)(1)(F).  To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**First:**  that the defendant offered for sale in interstate commerce an endangered species within the United States;

**Second:**  that the defendant acted knowingly;

**Third:**  that the animal was the endangered species alleged by the government;

**Fourth:**  that the defendant knew the animal was a *panthera tigris* (tiger); and

**Fifth:**  that the defendant did not have a permit to offer the animal for sale.

Regarding the first element, you are instructed that "interstate commerce" means commerce or travel between one state of the United States and another state of the United States, and that "commerce" includes travel, trade, transportation, and communication.

Regarding the first and third elements, you are instructed that *panthera tigris* (tiger) is an endangered species.

Regarding the second element, you are instructed that "knowingly" means that the act was done voluntarily and intentionally, and not because of mistake or accident.  You are further instructed that the government need not prove the defendant intended to violate the Endangered Species Act if he intended to perform the act prohibited thereby.

34

**INSTRUCTION NO. 22.**

**COUNTS 9 THROUGH 11—ILLEGAL SALE
(ENDANGERED SPECIES ACT)
16 U.S.C. § 1538(a)(1)(F)**

The defendant has been charged with three counts of violating 16 U.S.C. § 1538(a)(1)(F). To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

> **First:** that the defendant sold in interstate commerce an endangered species within the United States;
>
> **Second:** that the defendant acted knowingly;
>
> **Third:** that the animal was the endangered species alleged by the government;
>
> **Fourth:** that the defendant knew the animal was a *panthera tigris* (tiger); and
>
> **Fifth:** that the defendant did not have a permit to sell the animal.

Regarding the first element, you are instructed that "interstate commerce" means commerce or travel between one state of the United States and another state of the United States, and that "commerce" includes travel, trade, transportation, and communication.

Regarding the first and third elements, you are instructed that *panthera tigris* (tiger) is an endangered species.

Regarding the second element, you are instructed that "knowingly" means that the act was done voluntarily and intentionally, and not because of mistake or accident. You are further instructed that the government need not prove the defendant intended to violate the Endangered Species Act if he intended to perform the act prohibited thereby.

## INSTRUCTION NO. 23.

## COUNTS 12 AND 15 THROUGH 20—FALSE RECORDS OF WILDLIFE (LACEY ACT)
## 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii)

The defendant has been charged with seven counts of violating 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii) regarding tigers and lions. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**First:** that the defendant knowingly made or submitted a false record, account, label, or identification concerning wildlife;

**Second:** that the wildlife had been or were intended to be transported in interstate commerce; and

**Third:** that the defendant's making or submission of a false record, account, label, or identification concerning wildlife involved the sale of wildlife with a market value of greater than $350.

Regarding the first element, you are instructed that "knowingly" means that the act was done voluntarily and intentionally, and not because of mistake or accident.

Regarding the first, second, and third elements, you are instructed that "wildlife" means any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring thereof.

## INSTRUCTION NO. 24.

### COUNT 21—FALSE RECORD OF WILDLIFE
### (LACEY ACT)
### 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii)

The defendant has been charged with one count of violating 16 U.S.C. §§ 3372(d)(2) and 3373(d)(3)(A)(ii) regarding a lemur.  To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

**First:** that the defendant knowingly made or submitted a false record, account, label, or identification concerning wildlife;

**Second:** that the wildlife had been or were intended to be transported in interstate commerce; and

**Third:** that the defendant's making or submission of a false record, account, label, or identification concerning wildlife involved the sale of wildlife with a market value of greater than $350.

Regarding the first element, you are instructed that "knowingly" means that the act was done voluntarily and intentionally, and not because of mistake or accident.

Regarding the first, second, and third elements, you are instructed that "wildlife" means any wild animal, whether alive or dead, including without limitation any wild mammal, bird, reptile, amphibian, fish, mollusk, crustacean, arthropod, coelenterate, or other invertebrate, whether or not bred, hatched, or born in captivity, and includes any part, product, egg, or offspring thereof.

**INSTRUCTION NO. 25.**

**<u>CAUTION—CONSIDER ONLY CRIMES CHARGED</u>**

You are here to decide whether the government has proved beyond a reasonable doubt that the defendant is guilty of the crimes charged.  The defendant is not on trial for any act, conduct, or crime not charged in the Superseding Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for any of the crimes charged.  The fact that another person *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crimes charged.

## INSTRUCTION NO. 26.

## <u>MULTIPLE COUNTS</u>

A separate crime is charged against the defendant in each count of the Superseding Indictment.  You must separately consider the evidence against the defendant on each count and return a separate verdict for each count.

Your verdict as to any count, whether it is guilty or not guilty, should not influence your verdict as to any other count.

## INSTRUCTION NO. 27.

## <u>CAUTION—PUNISHMENT</u>

If you find the defendant guilty, it will be my duty to decide what the punishment will be.  You should not discuss or consider the possible punishment in any way while deciding your verdict.

**INSTRUCTION NO. 28.**

## COMMUNICATION WITH THE COURT

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to the bailiff, who will bring it to my attention.  I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

## INSTRUCTION NO. 29.

## <u>CLOSING ARGUMENTS</u>

Counsel will now be allowed to make closing arguments.  You are reminded that what the lawyers say is not evidence.  It is intended to assist you in recalling the evidence and to suggest inferences you may wish to draw, but you are not bound by what the lawyers say in closing argument.  It is your recollection of the evidence and the inferences you choose to draw that control.  Counsel may refer to the instructions I have given you about the law you are to apply when deciding this case.  In that regard, if there is any inconsistency between what counsel may say about the instructions and the actual instructions I have given to you, you must apply the instructions as I have stated them.

Because the government has the burden of proof, the government will go first, then the defendant will make a closing argument, and then the government will complete the arguments by presenting a rebuttal argument.

## INSTRUCTION NO. 30.

## <u>DUTY TO DELIBERATE—VERDICT FORM</u>

In a moment, the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.

If any of you have cell phones or similar devices with you, you are instructed to be sure they are turned off and then to turn them over to the bailiff as you enter the jury deliberation room.  They will be held by the bailiff for you and returned to you after your deliberations are completed and during any lunch break or similar period when you are not deliberating.  The purpose of this requirement is to avoid any interruption or distraction during your deliberations and to avoid any question of outside contact with the jury during your deliberations.

You will note from the oath about to be taken by the bailiff, that during the course of your deliberations, the bailiff and other persons are forbidden from communicating in any way or manner with any member of the jury on any subject touching the merits of the case.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  The second thing you should do is review the instructions.  Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your

deliberations.  Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.

To reach a verdict, whether it is guilty or not guilty, all of you must agree.  Your verdict must be unanimous on each count of the Superseding Indictment.  Your deliberations will be secret.  You will never have to explain your verdict to anyone.

You must consult with one another and deliberate in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong.  But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts.  You must decide whether the government has proved the defendant guilty beyond a reasonable doubt.

A verdict form has been prepared for your convenience.  The foreperson will write the unanimous answer of the jury in the space provided for each count of the Superseding Indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the bailiff.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

The bailiff will come forward and be sworn.

Members of the jury, please follow the bailiff to the deliberation room where you will commence your deliberations.  The alternate jurors will remain in the courtroom.  All persons in the courtroom please remain seated until the jury has retired.

_____
**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**