**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 18-227-SLP |
| v. | ) | |
| | ) | |
| JOSEPH MALDONADO-PASSAGE, | ) | |
| a/k/a Joseph Allen Maldonado | ) | |
| a/k/a Joseph Allen Schreibvogel | ) | |
| a/k/a "Joe Exotic," | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION FOR DISQUALIFICATION**

**COMES NOW** Defendant, JOSEPH MALDONADO-PASSAGE, by and through the undersigned counsel, and files this Motion for Disqualification of the Court and in support thereof states as follows:

**BACKGROUND**

On September 5, 2017, Joseph Maldonado-Passage was indicted in the Western District of Oklahoma. Counts 1 and 2 of the indictment and the superseding indictment alleged the Defendant, Joseph Maldonado-Passage, was involved in a murder for hire plan against the victim, Carole Baskin. (Indictments Ex.1.) The remaining counts involved violations of wildlife laws.

On October 11, 2018, the criminal case was assigned to the Honorable Scott L. Palk. Mr. Maldonado-Passage was tried and convicted on nineteen counts

involving wildlife crimes and two murder-for-hire plots in the Western District of Oklahoma in April of 2019.  Mr. Maldonado-Passage appealed his murder-for-hire convictions, arguing this Court erred by allowing Baskin to remain in the courtroom for the entire trial and by not grouping the two murder-for-hire convictions in calculating the advisory Guidelines range.  On July 14, 2021, the Tenth District Court of Appeal entered an Order vacating his sentence and remanding for resentencing.  On August 5, 2021, this court reassumed jurisdiction. In light of the anticipated sentencing hearing, Defendant moves for recusal and reassignment.

## ARGUMENT AND CITATION TO AUTHORITY

Section 455(a) and (b) of Title 28, United States Code provides separate, although overlapping, bases for recusal.  Subsection (a) provides that, "[a]ny justice, judge, or magistrate judge of the United States **shall** disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a).  Subsection (b) of the statute requires that the judge **shall** disqualify himself, "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §455(b)(1).  The former deals exclusively with the appearance of partiality in any circumstance, whereas the latter pertains to conflict of interests in specific circumstances.  Rightfully so, the existence of facts in 455(b) requires recusal even if the judge believes they do not create an appearance of impropriety.  Liljeberg v.

Health Services Acquisition Corp., 486 U.S. 847, 859 (1988).  Any instance in which a judge's partiality might reasonably be questioned, whether or not touched on in 455(b), requires recusal under section 455(a).  Id.

Under §455(a), a judge contemplating recusal should not ask whether he or she believes he or she is capable of impartially presiding over the case.  In applying § 455(a), "what matters is not the reality or bias of prejudice but its appearance." Liteky v. United States, 510 U.S. 540, 553 (1994).  The standard is purely objective: "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." United States v. Cooley, 1 F. 3d 985, 992 (10th Cir. 1993).  "It is of no consequence that the judge is not actually biased because § 455(a) concerns not only fairness to individual litigants, but, equally important, it concerns the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted."  In re Kensington Intern. Ltd., 353 F.3d 211, 220 (3d Cir. 2003).

Section 455(a) places a judge under a self-enforcing obligation to recuse where grounds exist.  United States v. Disch, 347 Fed. Appx.  421, 422 (11th Cir. 2009); see Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir. 2002) ("If the issue of whether §455 requires disqualification is a close one, the judge must be recused"); see United States v. Dandy, 998 F.2d 1344, 1349 (6th Cir. 1993) ("If the question of whether § 455(a) requires disqualification is a

close one, the balance tips in favor of recusal."); see Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 859 (1988) ("once facts that undermine the appearance of propriety come to light, the court must rectify an oversight and . . . take the steps necessary to maintain public confidence in the impartiality of the judiciary by means of recusal."); see United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) ("[a]ny doubts should be resolved in favor of recusal.")

Under 28 U.S.C. §144, "Bias or prejudice of judge," federal law mandates, "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." In Liteky, the Supreme Court noted that the standard for bias or prejudice under § 144 is identical to disqualification for bias and prejudice under § 455(b)(1).   The Court further held that "sometimes a judge is subject to disqualification under §§ 144 and 455 for bias manifested in judicial proceedings if the "opinions formed . . . display a deep-seated favoritism or antagonism that would make fair judgement impossible." Id. at 555.

This Court's extra-judiciary experience with Mr. Maldonado-Passage, and other witnesses in the case, which is still currently ongoing, creates bias against him and towards Carole Baskin, Big Cat Rescue, PETA, Amanda Green, federal agents

and, respectfully, has created an overwhelming appearance of bias, such that recusal is warranted under §§§ 144, 455(a) and 455(b)(1).

## Question of Partiality under Section 455(a)

In Edmond v. Athlete's Foot Group, 15 F. App'x 738, 740 (10th Cir. 2001) the Tenth Circuit held "without more, the fact that a judge presided in a previous criminal matter involving a party is not a valid ground for recusal."[1]  A civil rights case was previously filed by Joseph Maldonado-Passage wherein a recusal motion was denied by this Court.  To defend Mr. Maldonado-Passage's prior request of recusal by this very same judge, this court added the language "in a subsequent civil case" in citing to Edmond. This alone would leave a reasonable observer to harbor doubts about this Court's impartiality.  However, here; there is so much more.  There is a tremendous overlap between the facts, witness, parties, and evidence not only between *United States v. Joseph Maldonado-Passage and Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.,* but also *Big Cat Rescue Corp v. Schreibvogel*.

Simultaneous with this Court's assignment in the instant case, *United States of America v. Joseph Maldonado-Passage*, in November of 2017, he was assigned to and is still currently presiding over *Big Cat Rescue Corp. v. GW Exotic Memorial Animal Foundation* (5:14-cv-00377-SLP).  The alleged victim in the criminal case,

---

[1] *Joseph Maldonado-Passage v.  U.S. Federal Wildlife Services, et al.* was subsequently dismissed.

Carole Baskin, is founder and CEO of Big Cat Rescue and is the Plaintiff in this civil case. Joseph Maldonado-Passage as owner of GW Exotic Memorial Animal Park is a Defendant in this civil case, as are key witnesses Jeff Lowe and Carole Baskin (by and through her company). At issue in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.* is Baskin and her related business entities' attempted recovery of a money judgment against Maldonado-Passage. This money judgment is the alleged modus operandi of the criminal case and is the very same judgment the government refers to in the Indictment and the Superseding Indictment. *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al*. remains in active litigation with activity as recent as the date of this filing, August 13, 2021. Written orders are currently pending from this Court in that case.

Making matters far more complex and worse is the fact this Court has repeatedly found Lowe, Maldonado-Passage and their former businesses in contempt by "clear and convincing" evidence and it has also apparently personally "convinced" this Court that he knows exactly what happened throughout this decade long fight. Much more will soon come to light with various filings for a new trial or dismissal which cannot be contaminated by these stacking adverse rulings from several cases involving the same parties.

Also simultaneous with this Court presiding over *United States of America v. Joseph Maldonado-Passage* and *Big Cat Rescue Corp v. GW Exotic Memorial*

*Animal Foundation et al.* is this Court's assignment to *Big Cat Rescue Corp v. Schreibvogel* (5:16-cv-00155-SLP). At issue in *Big Cat Rescue Corp. v Schreibvogel* is the alleged fraudulent transfer of assets from Maldonado-Passage to Schreibvogel in an effort to shield those assets from recovery in Big Cat Rescue's money judgment. This money judgment, is also the very same judgment referred to in the Indictment and Superseding Indictment in *United States of America v. Joseph Maldonado-Passage* and in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.* Again, the alleged attempt to hide assets is also part of the alleged motive for the murder-for-hire, the core of the criminal indictment in *United State of America v. Joseph Maldonado-Passage*.

As with *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.*, the parties in *Big Cat Rescue Corp v. Schreibvogel* are the alleged victim in the criminal case, Carole Baskin, and the Defendant, Maldonado-Passage. Other named defendants were also witnesses in the criminal case. *Big Cat Rescue Corp v. Schreibvogel* remains in active litigation with this Court and a hearing is scheduled for September 8, 2021. Once again, the court is set to sanction witnesses which will still need to be heard in *United States of America v. Joseph Maldonado-Passage.*

This Court has recognized its familiarity with the Defendant in an order entered July 7, 2021 in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.* The Court stated: "[t]he Court will assume the parties' familiarity

with the facts of this interminable case, which has been pending for multiple years and spawned other cases, including a criminal matter." (7.7.21 Order Ex. 2.)  While in Diaz v. King, 687 F. App'x 709, 713 (10th Cir. 2017), the court held that prior adverse rulings or the judge's familiarity with a defendant are not enough.  This is so much more. The language of this Order takes it a step further than mere familiarity with the defendant and acknowledges that the facts in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.* were "spawned with" or resulted in the criminal case.

This Court has more than familiarity with the Defendant, as this Court has obtained personal knowledge of all aspects of the Defendant's personal and professional life, including the zoo, its operation, the witnesses, parties, and the victim in the criminal case.  By the Courts own admission, he obtained extrajudicial, personal knowledge of facts in the civil case, which were a part of the alleged motive in the criminal case.

The Court had personal knowledge of the "contention" between the victim and defendant and the circumstances surrounding the evidence of motive or modus operandi of the alleged murder for hire in the criminal case prior to the evidence unfolding at the criminal trial. We have actually exposed collusion leading up to and during trial involving Mr. and Mrs. Baskin, federal agents and Maldonado-Passage's own family and have new sworn testimony from witnesses and others which will

need an impartial review by the court. This is impossible given this Court's years of exposure to the facts in the civil cases and "clear and convinced" decisions regarding his opinions on who the truthful and forthright parties are.

The purpose of §455(a) is to promote public confidence in the integrity of the judicial process and such confidence "does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." Lijeberg, at 860.  An ample factual basis exists that an objective observer would question this Court's impartiality under §455(a) and the Court should have known of the potential for presenting an appearance issue requiring his disqualification.  Personal knowledge and deep-seated involvement (including repetitively reprimanding and sanctioning Mr. Maldonado-Passage, Mr. Lowe and rewarding Baskin and Big Cat Rescue) in three ongoing cases involving the same or similar parties, witnesses and evidence, which date back years, provides sufficient doubt about the judge's impartiality to any reasonable person.

**Knowledge of disputed evidentiary facts under Section 455(b)(1)**

455(b)(1) requires disqualification when judges have prior knowledge of disputed facts. In In Re Faulkner, 856 F. 2d 716 (5th Cir. 1988), the Fifth Circuit reversed a refusal to disqualify when a relative of the judge was a major participant

in transactions relating to the defendant's indictment and "had communicated to the judge . . . material facts and her opinions and attitudes regarding those facts. Similarly in United States v. Alabama, 828 F. 2d 1532 (11th Cir. 1987), the Eleventh Circuit held that the trial judge should have disqualified himself from a lawsuit against Alabama and its state universities when the judge had been a state legislator involved in legislative battles germane to the litigation.  The Court further held that the judge was "forced to make factual findings about events in which he was an active participant."

In In Re Matter of Hatcher, 150 F. 3d 631 (7th Cir. 1998), the defendant, a former gang member, moved for recusal of the judge whose son had participated in the prosecution of a defendant in a case related to a case before the judge, and the judge sat in on the trial to observe his son's performance.  The Seventh Circuit held that recusal was not mandated under section 455(b)(1) as the judge did not gain personal knowledge of disputed evidentiary facts regarding the defendant because he "was merely a spectator . . . [and] learned nothing any member of the public could also not have learned by attending the trial . . .  [and] had no recollection of any particular evidence.  However, the court did find recusal was mandatory under section 455(a), holding "the case in which the judge's son participated is so closely related to [the defendant's] case that our hypothetical reasonable person would question the judge's impartiality.

Similarly, here, the judge is an active arbiter in the civil cases as the presiding judge ruling on issues germane to the criminal case.  Here, the Court gained personal knowledge of disputed evidentiary facts regarding the Defendant.  He was more than just a spectator in the civil cases pertaining to Mr. Maldonado-Passage, he was the presiding judge for two years prior to and during the criminal trial.  His recollection of the evidence was fresh in his mind as similar issues were being briefed, argued, and ruled on simultaneously with the criminal proceedings.

More specifically, On March 5, 2019, Mr. Maldonado-Passage filed a Motion in Limine and Brief in Support "seeking a pretrial order prohibiting the government from introducing "testimony concerning how employees at the animal park were paid to include allegations payment of wages and was structured to avoid payroll tax withholdings." (Def.'s Mot. In Limine Ex. 3.) The government argued that "the amount the employees were paid and how they were paid is relevant to the jury understanding that Ms. Baskin's [civil] judgment placed significant financial pressure on the zoo."

This Court entered an Order on March 13, 2019 stating:

> "Court agrees that tax implications and any potential punishment based on tax laws is not relevant and should not be introduced. But the amounts paid to and the manner of payment of the zoo attraction's employees passes Rule 404(b) muster as to motive and intent. Applying *Huddleston*, motive and intent are proper purposes for introducing such evidence."

(3.13.19 Order Ex. 4.)

Simultaneous with this Court's consideration of the Defendant's Motion in Limine regarding park finances in the criminal case, this Court was also considering similar issues regarding park finances in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al*.  On March 4, 2019, one day before the Defendant's Motion in Limine was filed in the criminal case, Big Cat Rescue filed for an Order to Show Cause in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al*.  (Pl.'s Order to Show Cause Ex. 5.) Big Cat Rescue argued "not a single piece of financial information has been provided to the receiver since entry of the Receiver Order in July of 2018." And the receiver has been denied access to Greater Wynnewood's bank accounts and other books and records." That Motion referenced a prior order of Judge Palk of July 11, 2018, where he references the case's "lengthy and complicated history." (7.11.18 Order Ex. 6.) In that same Order this Court stated: ". . . due to the zoo-related parties continued attempts to move assets and change operators to escape Big Cat Rescue's collection efforts, fraudulent conduct is probable."

Furthermore, on December 5, 2018, the Defendant filed a Motion to Sever and Brief in Support as the Counts 1 and 2 were improperly joined with Counts 3 – 21 of the Superseding Indictment in the criminal case.  (Def.'s Mot. To Sever Ex. 7.) The Government's response states: [t]he relationship between the two murder-

12

for-hire counts and the wildlife violations become apparent when one examines the

relationship between Defendant and C.B., the victim of the murder-for-hire plots.  In

support, the government referenced paragraph five of the Introduction section of the

November 7, 2018 Superseding Indictment which reads:

> "In or about February 2013, the civil litigation
> resulted in the court entering a money judgment in
> excess of $1 million against Maldonado-Passage.
> **Since that time, and continuing until the present,
> C.B. and her related business entities have been
> attempting to collect on the money judgment
> against Maldonado-Passage and his related
> business entities and their successor entities."**

This Court entered an order denying the motion to sever on February 12, 2019.

(2.12.19 Order Ex. 8.)    In reaching its conclusions, the Court reviewed the

superseding Indictment and "the representations made by the parties in their briefs."

The order went on to state:

> "Here, the Court finds that the allegations made
> against Defendant are adequately alleged as parts of
> or connected to a common scheme or plan.  The
> Government alleges that both the murder-for-fire
> offenses and the ESA/Lacey Act offenses resulted
> from the same contentious and litigious relationship
> between Defendant and C.B.   According to the
> Government, the civil judgment against Defendant
> was the motive for the alleged murder-for- hire
> actions against C.B., and a long-running
> disagreement existed between Defendant and C.B.
> regarding Defendant's treatment of animals that
> included the actions alleged in the ESA/Lacey Act
> counts. The Government also ties the allegations
> together by asserting that the actions which violated

the ESA/Lacey Act led to C.B.'s criticism of Defendant, which led to Defendant's actions resulting in the civil judgment against him, which in turn caused him financial difficulties that he attempted to remedy through the murder-for-hire plot. Defendant's alleged falsification of "transfer forms for the animals to reflect they were being 'donated' rather than sold" and demands that "either cash payment or checks and money transfers [be] made out to names other than his own[ so he could] launder[] the money through [his] zoo's bank accounts, thereby hiding the income from judgment collection by C.B." also connect the Lacey Act counts and murder-for-hire counts as part of a common scheme or plan to avoid having to pay the civil judgment obtained by C.B."

Although the Court attempts to assert a fact stated by the government as describing the relationship as "contentious and litigious," this Court bases his ruling on the fact that the relationship is "contentious and litigious." This Court's knowledge of any "contentious and litigious" relationship did not come from these briefs on severing the counts. No hearing was held. They were argued before trial commenced. The nature of the relationship that existed between the Defendant and Baskin was something the government "expected" the evidence to show during the criminal trial. This Court would have no way of knowing the nature of the relationship between Mr. Maldonado-Passage and Carole Baskin or be in a position to agree to it being a "contentious and litigious" relationship without prior knowledge of it from the two pending civil matters for which he was and is **still currently** (emphasis added) presiding over.

14

In describing the relationship as "contentious and litigious," this Court recognized its pre-existing personal knowledge of the historical relationship between the Defendant and Carole Baskin; knowledge that preceded commencement of the criminal trial and knowledge that was acquired outside of the instant criminal proceedings. This Court also acknowledged allegations that the motive for the alleged murder-for-hire plan was in part the civil judgment "which in turn caused him financial difficulties that he attempted to remedy through the murder-for-hire plot." This Court was and is currently responsible for overseeing the recovery of the very same monetary judgment referenced in that Order. He therefore had and has pre-existing knowledge of the evidentiary facts in dispute associated with the alleged motive for the murder for hire plan as he is the Judge assigned to those collection efforts which continue at present. This would leave any objective observer to question his ability to remain partial.

Similar to Hatcher, the earlier civil proceedings in *Big Cat Rescue Corp v. GW Exotic Memorial Animal Foundation et al.* and *Big Cat Rescue Corp v. Schreibvogel* are so close to the criminal case before the judge that recusal under 455(a) is the only option. While the two civil and criminal cases are separate proceedings, the criminal indictments on the murder-for-hire and wildlife counts come from critical components of the civil cases involving Baskin trying to collect a money judgment from Mr. Maldonado Passage. The alleged motive of Mr.

Maldonado-Passage that led to the criminal indictments stemmed from the facts of the civil case, involving the same facts, parties, witnesses, property and zoo in question.

An ample factual basis exists that an objective observer would question this Court's impartiality for re-sentencing under §455(a) and the Court should have known of the circumstances requiring its disqualification.  A hypothetical reasonable person has no way of knowing how much personal knowledge via extrajudicial source, this court acquired or will continue to acquire from the civil cases while presiding over resentencing, as he is still presently presiding over the civil cases.

During the sentencing hearing on January 22, 2020, this Court stated:

> Paragraph 101, the defendant objects and that is based on some information that was provided by Mr. Lowe.  No ruling is necessary.  The defendant's statement is noted.  The Court fully recognizes the cross-accusations that have been argued between the defendant and Mr. Lowe.  However, Paragraph 101 does not impact the advisory guideline range calculation, or does it impact the Court's analysis of the 3553 factors.

(Sentencing Trans. Ex. 9.) In this statement, this Court references the "cross-accusations" between the Defendant and Jeff Lowe.  However, Jeff Lowe was not a witness nor did he testify in the criminal trial.  Judge Palk should not have known about any cross-accusations. He should only have knowledge of the evidence presented at the criminal trial. Here too this Court's opinions rested upon knowledge

16

that he ought not possess.  However, he noted the statement and fully recognized the statements.  An appearance of impartiality cannot exist when the Court has familiarity with facts not entered into evidence based on pre-existing personal knowledge of facts in dispute in the simultaneous civil cases.

This Court went on to further state at sentencing, "[w]hile you may be effectively out of the exotic animal business, **the issues which motivated you to solicit the murder of Carole Baskin remain**." **The sentence I impose will certainly advance the goals of punishing you for all of these offenses** (emphasis added) and will hopefully protect the public from any future offenses." These remarks reflect a mindset that requires disqualification.  This Court is essentially reminding Mr. Maldonado-Passage that the issues in the civil cases, of which he is presiding over, remain and that he is imposing a sentence punishing him for all of these offenses-civil included.  These "goals" which the Court advances is something other than what it should have been and, indeed, was improper.  Mr. Maldonado-Passage isn't on trial for the civil cases nor should his sentence have been imposed because of it.

The only way to cure this for purposes of Mr. Maldonado-Passage's re-sentencing is to recuse.  To find any differently would violate Mr. Maldonado Passage's Due Process rights as this Court's "goal" was to punish him for his actions in the civil cases of which this Court is currently presiding over.  The outcome of

any criminal trial must come through procedures that are not only fair in fact, but that are also seen to be fair by the public." <u>Hatcher</u> at 638.  While his sentencing was not fair in fact since it was vacated on appeal, any reasonable observer would find an appearance of impartiality on these statements alone under 455(a).

## **Personal Bias under §144**

This Court made a number of remarks during the sentencing hearing on January 22, 2020 that demonstrate the incrementally deep-seated, or "clear and convinced" bias or prejudice, this Court has developed toward the defendant. Joseph Maldonado-Passage's affidavit is incorporated herein by reference.  (Def.'s Aff. Ex. 10.) More specifically the Court stated,

a.  The Court certainly does not make any declaration that the defendant's testimony was truthful . . . (Sentencing Tr. 28:17-18).

b. I will tell you that I have absolutely zero question in my mind that (permanent animal ownership restrictions) will be a condition.  Mr. Maldonado has throughout this course of the evidence demonstrated his intent and willingness to circumvent the various regulatory statutes dealing with these animals and I -- it is the Court's intent to leave absolutely zero wiggle room that he should ever be involved in the possession or care of these animals (Sentencing Tr. 47:24-48:6).

c.  A significant example of that is, in spite of your prosecution for these very violations, evidence was introduced at trial of your attempt to broker the sale of a litter of lions for financial gain for your husband from the county jail while you were awaiting trial (Sentencing Tr. 77:6-10). This was a factor in sentencing and coupled with the statement by Judge Palk, [t]hose violations collectively demonstrate that defendant was engaged in a systematic trafficking of animals, which included the unlawful killing of a number of them.  And it is immaterial to me that the defendant disagrees with the interpretation of the statutes or what is included as a protected animal under the ESA (Sentencing Tr. 76:17-22).

d.  While you may be effectively out of the exotic animal business, the issues which motivated you to solicit the murder of Carole Baskin remain.  **The sentence I impose will certainly advance the goals of punishing you for all of these offenses** (emphasis added) and will hopefully protect the public from any future offenses." (Sentencing Tr. 78:1-4).

e.  Mr. Maldonado-Passage, you have conducted yourself for years doing as you pleased, whether in your actions and reactions to your conflict with the victim in this case, or in regard to your handling of these protected animals and the laws regarding their ownership.  It is clear from the evidence in this case that you are convinced that you always know better

19

and expect your explanations and directives to be taken at face value. You have routinely attempted to explain away your conduct, including today, blaming those around you, whether that is Carole Baskin, law enforcement, business partners or your own employees.  Sir, in spite of what you may believe, you are not the only in-step person in an out-of-step world. (Sentencing Tr. 81:10-21).

While expressing a determination to impose severe punishment particularly upon those found guilty of a particular offense is ordinarily not sufficient grounds for recusal, here, the Court did not impose this severe punishment within the limits of the law.  At sentencing, the Court misinterpreted the guidelines in grouping the two murder-for-hire counts.  This Court failed to interpret and enforce the plain language of 3D1.2(b) and instead focused on the application notes to find for not grouping the two counts. **The Tenth Circuit Court of Appeal held, "[t]his decision is as straightforward as § 3D1.2(b)'s common criminal objective" language is plain."** (Tenth Circuit Opinion Ex. 11.) However, banning animal possession, calling Maldonado-Passage arrogant and untruthful and legally over-sentencing him in the process cannot be a sign of objective fairness.  In fact, it's a sign of bias based on the years of exposure to Mr. Maldonado-Passage's story, which we will soon present was largely guided by ineffective assistance of counsel, newly admitted perjury at trial and government abuse of process.

20

Furthermore, by making the comment in subsection d stated above, the Court sought to punish Mr. Maldonado-Passage for wrongdoing allegedly committed in the civil case. This is clearly improper and shows an actual bias toward the defendant. The Court has a disposition to impose punishment outside the limits of the law based not only on evidence presented in the criminal case, but evidence and testimony from the civil cases and based on a desire to send a message based on what this Court "clearly and convincingly" already used as his guidepost. Even if there was no actual bias, at a minimum, an objective disinterested, lay observer fully informed of the facts underlying the grounds on which recusal is sought would entertain a significant doubt about the Court's impartiality such that recusal is warranted under § 455(a).

While a judge's acquaintance with one of the attorneys does not ordinarily require disqualification, there are cases where the extent of the intimacy, or other circumstances, renders disqualification necessary. In In re Continental Airlines Corp., 901 F.2d 1259 (5th Cir. 1990), a law firm representing a party was considering the judge for employment and only advised him of it after a hearing on attorney fees was awarded. The Fifth Circuit, in quoting Liljeberg, held while § 455(a) "does not call upon judges to perform the impossible;" requiring him to recuse before discovering he was being considered for employment, "once the judge became aware of the firm's interest, he was required to take the steps necessary to maintain the

public confidence in the judiciary." This meant "rejecting the offer, or, of considering accepting the offer, st[anding] recused . . . ."

Here, the Court and the Assistant United States Attorney ("AUSA"), Amanda Maxfield-Green, had several high-profile cases together as judge/prosecutor. Sometime during or after the trial, this Court voted for the AUSA to become a magistrate judge. Discovery as to these issues may be required at an evidentiary hearing, as former AUSA and now Magistrate Maxfield-Green engaged in some acts this court will need to weigh on forthwith.

Following her appointment, they continue to work together and this Court assigns cases to Magistrate Maxfield-Green. (Assignments Ex. 12.) While, not identical to the facts of In re Continental Airlines Corp., this case possesses some similarities. Once the Court became aware of his interest or desire to have the AUSA appointed as a magistrate, he should have recused himself in order to maintain the confidence of the judiciary.  At the very least he should purposes of resentencing.

Making matters far more complex, Magistrate Amanda Maxfield-Green has signed contracts with the producers of the documentary *Tiger King* and, even as an active magistrate judge, is being promoted by a very partisan animal group, the Kirkpatrick Foundation, and will be giving a speech sponsored by the Kirkpatrick Foundation on August 26, 2021 on "Tiger King on Trial: Prosecuting Joe Maldonado-Passage." See https://theanimalconference.com/agenda. While this

22

doesn't directly weigh on the bias of Judge Palk, his participation in her selection and the fact federal judges are speaking on open cases with such impunity certainly causes concern. (Facebook post Ex. 13).

Albert Einstein is attributed to saying "Insanity is doing the same thing over and over and over and expecting different results." A new sentencing is coming by mandate of the appellate court. Primary counsel for both the United States and the Defendant will be different. Witnesses will admit to new facts, including admitting perjury at trial, providing new evidence showing federal agent misconduct and collusion by the alleged victim and her husband as well as significant Brady violations. Meanwhile, television reporters and producers were massively violating the exclusionary rule under the noses of all involved. With all respect to Judge Palk and his esteemed career, it is not only reasonable, but bordering on definite, that his prior orders across four different cases over several years in which he found by "clear and convincing evidence" that the Defendant and his supporting witnesses were untruthful, obstructionist or abusive cannot provide the fair rehearing our justice system requires.

WHEREFORE, the Defendant respectfully requests this Court recuse himself from further proceedings in this case, and reassignment to another sitting District Court judge.

Dated this 13th day of August, 2021.

Respectfully Submitted,

/s/ Amy M. Hanna
Amy M. Hanna
Florida Bar No.: 0120471
/s/ John M. Phillips
John M. Phillips
Florida Bar No.: 0477575
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and a copy hereof has been furnished to those registered participants of the ECF system.

/s/ Amy M. Hanna
Amy M. Hanna
Florida Bar No.: 0120471
/s/ John M. Phillips
John M. Phillips
Florida Bar No.:0477575
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant
amy@floridajustice.com
jphillips@floridajustice.com