# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | **No.  CR-18-227-SLP** |
| | ) | |
| **JOSEPH MALDONADO-PASSAGE,** | ) | |
| **a/k/a Joseph Allen Maldonado,** | ) | |
| **a/k/a Joseph Allen Schreibvogel,** | ) | |
| **a/k/a "Joe Exotic,"** | ) | |
| | ) | |
| **Defendant.** | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION FOR DISQUALIFICATION

Respectfully submitted,

ROBERT J. TROESTER
Acting United States Attorney


s/ *Charles W. Brown*
Assistant U.S. Attorney
Bar Number:  20168
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
charles.brown4@usdoj.gov

# **Table of Contents**

**Page**

The Law ....................................................................................................... 1

Application of the Law ............................................................................... 3

    i.    Recusal is inappropriate because the defendant failed
        to establish that the Court obtained facts or information
        about the case from an "extrajudicial source" .............................. 4

    ii.    Recusal is inappropriate because the defendant failed to
        demonstrate deep-seated favoritism or antagonism ..................... 8

    iii.    "Contentious and litigious" relationship ..................................... 10

    iv.    "Cross-accusations" .................................................................... 13

    v.    Punishing the defendant for "all of these offenses" ................... 17

    vi.    18 U.S.C. § 3553 ........................................................................ 19

    vii.    Court's role in promoting the prosecutor to the bench ............... 21

Conclusion ................................................................................................ 24

# Table of Authorities

**Page**

## Federal Cases

*Berger v. United States,*
    255 U.S. 22 (1921)................................................................8

*Conkling v. Turner,*
    138 F.3d 577 (5th Cir. 1998) ...................................................... 6

*Edmond v. Athlete's Foot Group,*
    15 Fed. Appx. 738 (10th Cir. 2001) ...........................................5

*FDIC v. Sweeney,*
    136 F.3d 216 (1st Cir. 1998) .................................................... 23

*Franks v. Nimmo,*
    796 F.2d 1230 (10th Cir. 1986).................................................2

*Hinman v. Rogers,*
    831 F.2d 937 (10th Cir. 1987) ....................................... 3, 9, 24

*Liteky v. United States,*
    510 U.S. 540 (1994) ....................................................... *passim*

*New York City Housing Dev. Corp. v. Hart,*
    796 F.2d 976 (7th Cir. 1986)................................................... 24

*Sentis Group, Inc. v. Shell Oil Co,*
    559 F.3d 888 (8th Cir. 2009) ............................................... 8-9

*Thomas v. Trustees of Columbia Univ.,*
    30 F.Supp.2d 430 (S.D.N.Y. 1998) ................................... 23-24

*United States v. Burger,*
    964 F.2d 1065 (10th Cir. 1992)............................................... 24

iii

*United States v. Cooley,*
    1 F.3d 985 (10th Cir. 1993)........................................................ 2, 3, 9, 22

*United States v. Coven,*
    662 F.2d 162 (2d Cir. 1981) ................................................................ 6

*United States v. Cowden,*
    545 F.2d 257 (1st Cir. 1976) ............................................................. 6-7

*United States v. Erickson,*
    561 F.3d 1150 (10th Cir. 2009).......................................................... 1, 2

*United States v. Martinez,*
    446 F.3d 878 (8th Cir. 2006) ................................................................ 9

*United States v. Page,*
    828 F.2d 1476 (10th Cir. 1987) ........................................................... 6

*United States v. Pearson,*
    203 F.3d 1243 (10th Cir. 2000)............................................................1

*United States v. Pritchard,*
    875 F.2d 789 (10th Cir. 1989) .............................................................. 6

*United States v. Randall,*
    440 Fed. Appx. 283 (5th Cir. 2011) ................................................... 7, 8

*United States v. Wisecarver,*
    644 F.3d 764 (8th Cir. 2011) .............................................................. 21

## **<u>Federal Statutes</u>**

18 U.S.C. § 3553..................................................................... 18, 19, 20

18 U.S.C. § 3661............................................................................. 19

28 U.S.C. § 144............................................................................ 5, 24

28 U.S.C. § 455 ................................................................................... *passim*

28 U.S.C. § 631 ............................................................................... 21

## Other Authority

H.R. Rep. No. 93-1453
    93d Cong., 2d Sess. (1974) ................................................. 5, 23

Black's Law Dictionary 479 (7th ed. 2000) .......................................... 5

Pub.L. No. 93-512
    88 Stat. 1609 ................................................................. 5

U.S. Code Cong. & Ad. News 6351 ............................................... 5, 24

This Court should deny Defendant's Motion for Disqualification, Doc. 165 (Motion), because it amounts to nothing more than a complaint about this Court's initial sentence and defense counsel's unsubstantiated speculation.

## The Law

The standard for disqualification of a judge is well-established. "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This means "[a] judge has a continuing duty to recuse under § 455(a) if sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir. 2000). "'Judicial rulings alone almost never constitute a valid bases for a bias or partiality motion . . .. They can only in the rarest circumstances evidence the degree of favoritism or antagonism required' for recusal." *United States v. Erickson*, 561 F.3d 1150, 1169 (10th Cir. 2009) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)) (alterations omitted). "And 'a judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain

1

immune.'" *Id.* (quoting *Liteky*, 510 U.S. at 556) (alterations omitted)).
"'Expressions of impatience, dissatisfaction, annoyance, and even anger, that
are within the bounds of what imperfect men and women, even after having
been confirmed as federal judges, sometimes display' do not support a bias
challenge 'unless they display a deep-seated favoritism or antagonism that
would make fair judgment impossible.'" *Id.* (quoting *Liteky*, 510 U.S. at 555-
56) (alterations omitted)).

The Tenth Circuit has "stressed that 'section 455(a) must not be so
broadly construed that it becomes, in effect, presumptive, so that recusal is
mandated upon the merest unsubstantiated suggestion of personal bias or
prejudice.'" *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993) (quoting
*Franks v. Nimmo*, 796 F.2d 1230, 1234 (10th Cir. 1986)).  "The statute is not
intended to give litigants a veto power over sitting judges, or a vehicle for
obtaining a judge of their choice." *Id.*  As a result, the Tenth Circuit has
given a non-exhaustive list of matters "which will not ordinarily satisfy the
requirements for disqualification under § 455(a)," including: "[r]umor,
speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar
non-factual matters;" "the mere fact that a judge has previously expressed an
opinion on a point of law;" "prior rulings in the proceeding, or another

2

proceeding, solely because they were adverse;" "mere familiarity with the defendant(s), or the type of charge, or kind of defense presented;" "baseless personal attacks on or suits against the judge by a party;" and "threats or other attempts to intimidate the judge." *Cooley*, 1 F.3d at 993-94 (citations omitted). Finally, "'there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is.'" *Id.* at 994 (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)).

## Application of the Law

The defendant centers most of his argument on this Court's role in presiding over the civil litigation involving Big Cat Rescue Corp. (Motion at 4-21). He claims that by presiding over the civil cases, this Court learned information and facts that resulted in the Court developing a bias against him and in favor of various parties involved in the criminal case. *Id.* at 4-5.

The defendant cites both § 455(a) and § 455(b)(1) as grounds for relief. *Id.* at 5, 9. The defendant repeatedly claims that the Court improperly obtained and relied on personal and extrajudicial knowledge about him while presiding over the criminal case. For example, early in his motion he argues: "This Court's extra-judiciary experience with [the defendant], and other

witnesses in the case, which is still currently ongoing, creates bias against

him . . . and has created an overwhelming appearance of bias[.]" (Motion at

4-5). He then alleges: "By the Court's own admission, he obtained

extrajudicial, personal knowledge of facts in the civil case, which were a part

of the alleged motive in the criminal case." *Id.* at 8. Later in the motion, he

claims: "A hypothetical reasonable person has no way of knowing how much

personal knowledge via extrajudicial source, this court acquired or will

continue to acquire from the civil cases while presiding over resentencing, as

he is still presently presiding over the civil cases." *Id.* at 17. The defendant

repeats these claims about the Court harboring bias based on "personal" and

"extrajudicial" knowledge. *See id.* at 9, 11, 15, 16. Remarkably, the

defendant apparently believes that any information or facts the Court

learned during its judicial role in the civil case is characterized as "personal"

or "extrajudicial" as it relates to the Court's judicial role in the criminal case.

He is wrong.

>    **i.    Recusal is inappropriate because the defendant failed to
>           establish that the Court obtained facts or information
>           about the case from an "extrajudicial source"**

Section 455(b)(1) requires recusal when a judge has "personal

knowledge of disputed evidentiary facts concerning the proceeding ...." The

4

term "personal" was carried over from 28 U.S.C. § 144 when § 455 was amended in 1974.  Pub.L.No.93-512, 88 Stat. 1609.  This amendment to section 455 was intended to make the statutory standards for judicial disqualification consistent with those set forth in the ABA Code of Judicial Conduct.  *See* H.R.Rep.No.93-1453, 93d Cong., 2d Sess. (1974), reprinted in (1974) U.S.Code Cong. & Ad.News 6351.  The ABA Code was adopted in 1972 in the light of a long line of cases holding that "personal" as used in § 144 means "extrajudicial."

Black's Law Dictionary defines "extrajudicial" as "outside the functioning of the court system."  BLACK'S LAW DICTIONARY 479 (7th ed. 2000).  Any facts or information that a judge is exposed to or learns while performing judicial duties are not extrajudicial and thus do not constitute grounds for disqualification.  Contrary to the defendant's assertion, any knowledge acquired by the Court while performing judicial duties in the ongoing civil litigation does not stem from an extrajudicial source to warrant disqualification in the instant criminal case.  *See Liteky*, 510 U.S. at 551 ("[O]pinions held by judges as a result of what they learned in earlier proceedings" do not constitute bias or prejudice); *Edmond v. Athlete's Foot Group*, 15 Fed. Appx. 738, 740 (10th Cir. 2001) ("Without more, the fact that

5

a judge presided in a previous criminal matter involving a party is not a valid ground for recusal [in a subsequent civil matter].”); *Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998) (“Personal knowledge” as used in § 455(b)(1) generally does not encompass knowledge acquired by a judge while performing judicial duties. As a general rule, for purposes of recusal, a judge’s ‘personal knowledge’ of evidentiary facts means ‘extrajudicial,’ so facts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification.”); *United States v. Pritchard*, 875 F.2d 789, 791 (10th Cir. 1989) (“Prichard’s allegations of bias and prejudice against the district judge are based only on the district judge’s prior judicial contacts with him.  This is insufficient to support recusal.”); *United States v. Page*, 828 F.2d 1476, 1481 (10th Cir. 1987) (“Section 455(b)(1) does not apply to knowledge obtained in the course of related judicial proceedings.”); *United States v. Coven*, 662 F.2d 162, 168 (2d Cir. 1981) (in affirming denial of § 455 motion, Court ruled that information obtained by judge in earlier civil proceeding was not the type of personal information which would require disqualification but rather was information which she acquired in performance of her judicial duties); *United States v. Cowden*, 545 F.2d 257,

6

265-66 (1st Cir. 1976) ("[T]he judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case or in a separate trial in the same case.").

In *United States v. Randall*, 440 Fed. Appx. 283, 285 (5th Cir. 2011), the judge imposed a substantial upward variance and sentenced the defendant to 180 months in prison for various fraud convictions. The defendant filed a motion to disqualify the judge under § 455(a) and 455(b)(1), claiming that "the judge had personal knowledge of disputed facts because he also presided over the civil suit filed by the SEC against [him]." *Id.* at 285. The Court affirmed the denial of the motion to disqualify, holding:

> We find no abuse of discretion in the judge's denial of Randall's motion to recuse. Randall has made no showing that the judge obtained any "extrajudicial information." Rather, all of the information the judge allegedly received by presiding over the civil case was information gained while the judge acted in a judicial capacity. Judges routinely receive potentially inflammatory or irrelevant information that cannot later be used in a subsequent or related proceeding—for example, evidence found to be inadmissible. Yet, we rarely find such information requires recusal. Without any showing that the "intrajudicial" information learned by the judge in this case was of a type that would make fair judgment impossible, such information is not disqualifying.
>
> Nor do we believe that the mere fact that the judge obtained information during the course of the civil proceeding would raise

a question in the mind of a reasonable person as to the judge's
impartiality

*Id.* at 286.  Like in *Randall*, anything said, heard, or discovered in the course
of the civil litigation cannot be considered "extrajudicial" in the sense that
this Court learned or had knowledge of it from sources outside its judicial
duties.  Accordingly, because the defendant has failed to show that the Court
harbors any extrajudicial bias, the Court must deny the disqualification
motion under § 455(b)(1).

### ii.   Recusal is inappropriate because the defendant failed to demonstrate deep-seated favoritism or antagonism

Absent extrajudicial sources of bias, recusal is only justified when the
court displays deep-seated favoritism or antagonism.  In *Liteky*, the Supreme
Court offered the paradigmatic example of the deep-seated favoritism or
antagonism warranting recusal: a World War I espionage case against a
German-American where the presiding judge made disparaging remarks
against German-American citizens.  *Liteky*, 510 U.S. at 55 (discussing *Berger
v. United States*, 255 U.S. 22, 41 (1921)).  Other instances where a court
displayed deep-seated favoritism or antagonism similarly illustrate the stark
contrast between the conduct necessitating recusal under Section 455(a) and
the facts presented here.  *See, e.g., Sentis Group, Inc. v. Shell Oil Co*, 559

F.3d 888, 905 (8th Cir. 2009) (holding that recusal was appropriate when the district court directed profanities at counsel, denied counsel the chance to adequately respond at a sanctions hearing, and misconstrued the language in its own orders to the detriment of counsel).

The defendant has offered no actual examples of either extrajudicial bias or "deep-seated favoritism or antagonism" in this Court's conduct of these proceedings.  He has failed to allege with any particularity conduct that would lead a reasonable jurist to question the Court's neutrality.  *See United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006) ("Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise.").  He musters only speculative or inconsequential allegations to support his claim.  Recusal is, therefore, not required.  And, absent a basis for judicial disqualification under *Liteky* and its progeny, the Court must deny the defendant's disqualification motion under § 455(a).  *See Cooley*, 1 F.3d at 994 ("there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is.").  *See also Hinman*, 831 F.2d at 939) ("A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation.").

9

### iii.    "Contentious and litigious" relationship

Outside of his conjecture and speculation surrounding purported "personal" and "extrajudicial" bias, the defendant offers a few specific allegations in his misplaced effort to disqualify the Court.  First, the defendant attempts to rely on an adverse ruling on a pre-trial motion as proof that this Court was biased against him and should be disqualified.  In denying the defendant's motion to sever, this Court noted that "The Government alleges that both the murder-for-fire offenses and the ESA/Lacey Act offenses resulted from the same contentious and litigious relationship between Defendant and C.B."  (Doc. 55 at 5).  The defendant now claims that this Court's description of the relationship between him and Carole Baskin as "contentious and litigious" shows that the Court based its decision on "pre-existing personal knowledge" and thus proves bias and partiality.  (Motion at 13-15 ("This Court would have no way of knowing the nature of the relationship between Mr. Maldonado-Passage and Carole Baskin or be in a position to agree to it being a 'contentious and litigious' relationship without prior knowledge of it from the two pending civil matters for which he was and is **still currently** presiding over.")(emphasis in original)).

As discussed above, given that it is normal and proper for a judge to sit in successive stages of a case and related cases, a ruling made by a judge as a result of what he learned in earlier proceedings, or in related proceedings, is not bias, prejudice, or partiality.  However, even if we applied the defendant's interpretation of "personal" and "extrajudicial" knowledge, there is no question that the Court's ruling on the motion to sever was based merely on the charging instrument and pleadings.  In fact, in denying the motion, the Court explained it had "reviewed both the Superseding Indictment [Doc. No. 24] and the representations made by the parties in their briefs."  (Doc. 55 at 1).  An objective review of these documents clearly establishes that the relationship between the defendant and Mrs. Baskin was contentious and litigious.

The "speaking" superseding indictment alleged, among other facts:

3. MALDONADO-PASSAGE and C.B. had an ongoing dispute regarding the proper care, exhibition, and breeding practices for big cats, such as tigers and lions. Until 2011, the dispute was carried on primarily through traditional and social media.

4. In or about January 2011, C.B. and her related business entities filed a civil lawsuit against MALDONADO-PASSAGE and his related business entities.

5. In or about February 2013, the civil litigation resulted in the court entering a money judgment in excess of $1 million against MALDONADO-PASSAGE. Since that time, and continuing until

11

the present, C.B. and her related business entities have been
attempting to collect on the money judgment against
MALDONADO-PASSAGE and his related business entities and
their successor entities.

6. Beginning at least by January 2012, MALDONADO-PASSAGE
posted content online, including on Facebook and YouTube
websites, containing threats of violence against C.B.

(Doc. 24 at 1-2).  The government's response to the motion to sever

provided the following additional facts:

Defendant's ill-will toward C.B. began at least by 2010, after C.B.
began publicly criticizing Defendant's well-known business
practices of breeding big cats and exhibiting the cubs at his exotic
animal park and in traveling shows for paid photos and petting
encounters with members of the public.

In approximately 2010, Defendant retaliated against C.B. by
using the name and logo of her animal sanctuary in connection
with his own cub-handling business practices.

In January 2011, C.B. filed a civil lawsuit against Defendant for
causes of action relating to his use of her sanctuary's name and
logo. This lawsuit resulted in a $1 million judgment against
Defendant, granted in February 2013. From February 2013 until
the present, C.B. has maintained active litigation against
Defendant in an attempt to collect the judgment.

From February 2013 to the present, Defendant endeavored to
hide money and assets so that they would not be subject to
judgment collection by C.B. Some of these efforts involved
creating successor business entities, fraudulently transferring
business assets and property to other entities and parties, and
fraudulently filing bankruptcies.

12

> The judgment and the costs of extended litigation caused
> Defendant and his exotic animal park to experience significant
> financial difficulties, which continued even after Defendant
> transferred ownership of the park in February 2016.
>
> Defendant made statements in person and on social media that
> C.B.'s litigation and judgment were causing the financial ruin of
> the zoo and that if C.B. "won," the zoo would close and the
> animals would be taken away. He also made statements
> indicating that C.B.'s death was the only way that the litigation
> would end and that the zoo and its animals would be saved.

(Doc. 44 at 3-4).  Thus, contrary to the defendant's assertion that "this

Court's knowledge of any 'contentious and litigious' relationship did not

come from these briefs," there is no question that the Court could – and

did – base its decision on these pleadings.  The Court's description of

the relationship between the defendant and Mrs. Baskin does not

suggest that the Court harbors any extrajudicial bias nor does the

description demonstrate a "deep-seated favoritism or antagonism"

rendering fair judgement impossible in these proceedings.

### iv.   "Cross-accusations"

The defendant further argues that this Court's "personal" familiarity

with Jeff Lowe is a ground for disqualification.  (Motion at 16-17).  Among his

many objections to the presentence report, the defendant objected to

paragraph 101, which contained information that had been provided by Jeff

Lowe. (Doc. 144 at 44-45). When addressing that specific objection, the Court explained that no ruling was necessary because the information in paragraph 101 did "not impact the advisory guideline range calculation, nor [did] it impact the Court's analysis of the 3553 factors." *Id.* During that explanation, the Court noted that it "fully recognize[d] the cross-accusations that have been argued between the defendant and Mr. Lowe." *Id.*

The defendant now claims that this reference to "cross-accusations" proves that this Court was not impartial. (Motion at 16-17). Specifically, the defendant contends "Judge Palk should not have known about any cross-accusations. He should only have knowledge of the evidence presented at the criminal trial. Here too this Court's opinions rested upon knowledge that he ought not possess." *Id.* Again, even if the defendant's legal standard was correct, there is no doubt that the Court's understanding of the nature of the relationship between the defendant and Jeff Lowe was based on information developed throughout the criminal case.

From the outset of the criminal case, the defendant has repeatedly accused Jeff Lowe of countless nefarious deeds. For example, in responding to the government's motion in limine, the defendant stated that "[t]he government's attempt is understandable in light of the overwhelming

14

evidence that others, including Jeff Lowe, are culpable for most of the indictment." (Doc. 86 at 2). Additionally, accusations made by Jeff Lowe against the defendant were outlined in the presentence report, and the defendant succinctly objected to those accusations, stating "Lowe's allegations are lies." (Doc. 126 at 23, 60).

Finally, there was substantial testimony regarding Jeff Lowe throughout the trial, including from Mr. Garretson and Mr. Glover. However, it was the defendant's own testimony during the trial that clearly establishes the nature of his relationship with Jeff Lowe. During his testimony, the defendant made several allegations against Jeff Lowe, including accusing him of human trafficking, committing assault, and defrauding individuals by manufacturing and selling clothing items purportedly belonging to the late rock star, Prince. The following is a sampling of the defendant's actual trial testimony:

> "Okay. So he builds this little cabin out of storage buildings and -- for [Jeff Lowe] and Lauren to move into. So they finally move into their own cabin. And by that time the criminal side started coming out, and I started seeing what kind of scams they're running and -- and they turned the park into a front for his criminal side. And then it turned into their own little private hunting ranch of young girls, and it just escalated from there until I just couldn't stomach it anymore." (Doc. 120 at 30).

15

"March, April -- March through June is when the Neon Jungle was there. And [Jeff Lowe] hooked up with this lady from Las Vegas in the middle of that and started human trafficking in Las Vegas." *Id.* at 33.

"Well, I mean, it started out that [Jeff Lowe and Mr. Garretson] were -- they were manufacturing fake Prince clothes in the office[.]" *Id.* at 62.

"That day started in the office, and [Jeff Lowe] was throwing shit around and hitting file cabinets. I thought they were going to beat the hell out of me because I have seen [Jeff Lowe] beat up an employee before." *Id.* at 116.

This testimony establishes that the Court was aware of the "cross-accusations" between the defendant and Jeff Lowe based on information developed during the instant criminal case. Indeed, during the defendant's trial testimony, the Court sustained an evidentiary objection lodged by the government, finding:

I think it's well established in the evidence, at least the jury could believe or disbelieve that there's ample testimony that Mr. Passage and Mr. Lowe were at odds at various times on various ends of the extremities. And I don't think it is a mystery, and it's clearly established that there's testimony that Mr. Lowe wanted him out of the park.

*Id.* at 63-65.  Accordingly, the defendant's claim regarding this Court's "pre-existing personal knowledge" (Motion at 17) of facts related to Jeff Lowe is, at best, misplaced, and certainly does not support his accusation that this Court was biased against him.

16

v.    **Punishing the defendant for "all of these offenses"**

Similar to his erroneous argument regarding Jeff Lowe, the defendant selectively quotes from this Court's sentencing pronouncement to conclude that this Court punished him for conduct related to the civil litigation. (Motion at 17-18).  Of the 82-page sentencing transcript, the defendant claims the following two sentences show that this Court had "a mindset that requires disqualification:"

> While you may effectively be out of the exotic animal business, **the issues which motivated you to solicit the murder of Carole Baskin remain.  The sentence I impose will certainly advance the goals of punishing you for all of these offenses** and will hopefully protect the public from any future offenses.

(Motion at 17 (emphasis in original)).

The defendant inexplicably interprets the reference to "all of these offenses" to mean that the Court was sentencing him for both the criminal charges as well as the civil cases.  *Id.* ("This Court is essentially reminding Mr. Maldonado-Passage that the issues the civil cases, of which he is presiding over, remain and that he is imposing a sentence punishing him for all of these offenses – civil included.").  It is apparent from the record that the Court's reference to "all of these offenses" related to a sentence that would hold the defendant accountable for the murder-for-hire convictions as well as

17

the wildlife convictions.

Prior to making this statement, the Court analyzed the § 3553(a) factors and discussed the egregiousness of the defendant's conduct as it related to the two murder-for-hire convictions. (Doc. 144 at 74-75). Emphasizing that the wildlife convictions were no less important and that the sentence would hold the defendant responsible for that conduct, the Court explained:

> With regard to the Lacey Act and the endangered species counts of conviction, the offenses were no less serious in the context of the statutes. And I say that, which I understand compared to the murder-for-hire convictions which dealt with a human life, I don't mean to compare the lives of those animals, but in the context of those violations, those were extremely serious. And while I would agree that those wildlife counts are consumed by the guideline calculation regarding Counts 1 and 2 and would result in no increase in the calculation, I do disagree with the position that those violations should not be considered significant criminal conduct.

*Id.* at 75-76. Soon after discussing the significance of the wildlife convictions, the Court explained that the sentence would punish the defendant "for all of these offenses." *Id.* at 78. Contrary to the defendant's assertion, the Court did not sentence him on the civil litigation. The Court properly sentenced him for all the offenses he was convicted of, including the murder-for-hire convictions **and** the wildlife convictions.

18

But even if, in imposing its sentence against the defendant, the Court took into consideration the facts from the civil cases, this would not be improper and certainly would not be grounds for disqualification.  As discussed above, given that it is normal and proper for a judge to sit in successive stages of a case and related cases, a ruling made by a judge as a result of what he learned in earlier proceedings, or in related proceedings, is not bias, prejudice, or partiality.  This conclusion is even more certain in the sentencing context given the Court's extraordinarily broad discretion to consider any information concerning a defendant's background and character when imposing sentence.  *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

### vi.  18 U.S.C. § 3553

The defendant also claims that this Court's remarks at sentencing "demonstrate the incrementally deep-seated, or 'clear and convinced' bias or prejudice, this Court has developed toward the defendant."  (Motion at 18).  He is wrong.

19

As the sentencing judge, it was proper for this Court to impress upon the defendant the seriousness of his offenses.  When imposing a sentence, sentencing courts are required, by statute, to promote respect for the law; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.  18 U.S.C. § 3553(a)(2)(A), (B) & (C). Sentencing courts are further required to state in open court the reasons for imposing each particular sentence. 18 U.S.C. § 3553(c).  The Court's application of the § 3553(a) factors, along with its remarks in open court announcing the sentence, were intended to fulfill these statutory obligations. A reasonable person with access to the relevant facts (including the pleadings and trial testimony) would not question the impartiality of the Court. Additionally, adverse rulings, including a substantial sentence, almost never provide a basis for recusal, nor do opinions formed or expressed by a judge based upon the record "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 554-55.  The comments here were based upon the criminal case, not some extrajudicial source, and they do not reflect deep-seated favoritism or antagonism that would make fair judgment impossible. *See id*. at 555–56 (expressions of impatience, dissatisfaction, annoyance and even anger do not

support bias challenge unless they display deep-seated favoritism or antagonism toward the defendant).  The defendant's dissatisfaction with the outcome of this Court's routine exercise of its judicial responsibilities cannot be grounds for recusal under § 455.  *See United States v. Wisecarver*, 644 F.3d 764, 771 (8th Cir. 2011) ("[T]he district court merely made findings at the first sentencing hearing based on the evidence presented, and no reasonable observer would have perceived that it could not continue to rule impartially in subsequent proceedings on remand.").

### vii.   Court's role in promoting the prosecutor to the bench

Finally, the defendant claims that the Court's relationship with the lead prosecutor, who is now a United States Magistrate Judge, requires disqualification.  (Motion at 21-22).  Remarkably, the defendant provides absolutely no support for his speculative conclusion about this Court's role in Magistrate Judge Maxfield-Green's ascent to the bench.[1]  *Id.*  In light of this wholly unsupported conclusory assertion, coupled with the undersigned's lack of knowledge about the facts underlying this claim, a sufficient response is

---

[1] The appointment of magistrate judges is largely governed by 28 U.S.C. § 631.  For a person to be appointed by a magistrate judge, they must first be recommended by the court's merit selection panel and then are selected by either a majority vote of all the judges of the court or, if there is no majority, by the chief judge.

not possible.  However, nothing contained in the defendant's unfounded allegations, even if true, would establish bias causing disqualification. Absent any facts, the defendant has failed to show disqualification is warranted.  *See Cooley*, 1 F.3d at 993 (holding that "[r]umor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" do "not ordinarily satisfy the requirements for disqualification").

At the end of the day, the defendant is essentially judge shopping.  He received a lengthy sentence and understands that he is facing a substantial sentence at his upcoming re-sentencing hearing.  Notably, he has never moved to disqualify this Court until now.  The civil litigation he complains of that this Court is presiding over was transferred to this Court before he was indicted, and the case was assigned to this Court.  The defendant did not move to disqualify this Court after the criminal case was filed.  Nor did he ask the Tenth Circuit to reassign the case to a different district judge in the event his sentence was overturned.

Faced with the prospect of receiving a substantial sentence, the defendant believes his odds would be better in front of a different judge. Perhaps he believes that a new sentencing judge would not be familiar with the egregious nature and circumstances of the offenses he was convicted of.

22

Convictions stemming from his hiring two separate individuals to murder his long-time rival.  Perhaps he believes a new sentencing judge would overlook his background and character.  Regardless of the motive, when ruling on a motion to disqualify, a judge must be ever cautious of "the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *FDIC v. Sweeney*, 136 F.3d 216, 220 (1st Cir. 1998) (citations omitted).  The congressional framers of the disqualification statute, § 455(a), cautioned against its misuse:

> [E]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification must have a reasonable basis. Nothing in [the statute] should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not to have to face a judge where there is a reasonable question of impartiality, but they are not entitled to a judge of their own choice.

H.R.Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355. To require that judges disqualify themselves unnecessarily is to encourage litigants "to advance speculative and ethereal arguments for recusal and thus arrogate to themselves a veto power over the assignment of judges." *Thomas v. Trustees of Columbia Univ.*, 30 F.Supp.2d 430, 431 (S.D.N.Y. 1998).  As one

court has aptly observed, "A judge who removes himself whenever a party asks is giving that party a free strike, and Congress rejected proposals ... to allow each party to remove a judge at the party's option." *New York City Housing Dev. Corp. v. Hart*, 796 F.2d 976, 981 (7th Cir. 1986).

## <u>Conclusion</u>

The defendant's current allegations are almost entirely based on adverse rulings by the Court, or conjecture and speculation, none of which provide a basis for disqualification. The defendant has not – and cannot – establish that this Court has demonstrated the type of deep-seated bias or even the appearance of bias requiring recusal under § 455 or § 144.[2]

---

[2] For the same reasons that his motion to disqualify fails under § 455, it also fails under § 144. The Tenth Circuit has held that "[u]nder § 144, the affidavits filed in support of recusal are strictly construed against the affiant and there is a substantial burden on the moving party to demonstrate that the judge is not impartial." *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992); *see also Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). "The affidavit must state with required particularity the identifying facts of time, place, persons, occasion, and circumstances" necessitating recusal. *Hinman*, 831 F.2d at 939. The defendant's affidavit is full of the same conjecture and speculation contained in his motion that has been thoroughly addressed in this response. Accordingly, he has failed to meet the substantial burden to demonstrate that the Court is not impartial.

Accordingly, the United States respectfully requests that the Court deny the

defendant's motion for disqualification.[3]

<div style="margin-left:40%">

Respectfully submitted,

ROBERT J. TROESTER
Acting United States Attorney

s/ *Charles W. Brown*
Assistant U.S. Attorney
Bar Number:  20168
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (Office)
(405) 553-8888 (Fax)
charles.brown4@usdoj.gov

</div>

## CERTIFICATE OF SERVICE

     I certify that on August 20, 2021, I electronically filed this response
with the clerk of court for the U.S. District Court, Western District of
Oklahoma, using the electronic case filing system of the court.

<div style="margin-left:40%">

s/ *Charles W. Brown*
Charles W. Brown
Assistant United States Attorney

</div>

---

[3] Additionally, the defendant suggests potential future filings alleging some type of
government misconduct.  (Motion at 6, 8-9, 22-23).  The United States will respond
to any future filing at the appropriate time.