IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSEPH MALDONADO-PASSAGE,<br>a/lda Joseph Allen Maldonado<br>a/lda Joseph Allen Schriebvogel<br>a/lda "Joe Exotic",<br><br>    Defendant. | ) <br> ) <br> ) <br> )    Case No. 18-227-SLP <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## REPLY TO UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR DISQUALIFICATION

**COMES NOW** Defendant, JOSEPH MALDONADO-PASSAGE, by and through undersigned counsel, and files this Reply to the United States' Response in Opposition to Defendant's Motion for Disqualification. In support, Defendant states:

The United States alleges the Defendant's arguments are based on speculation and suspicion. The United States opines that Defendant's Motion, "amounts to nothing more than a complaint about this Coutt's initial sentence and defense counsel's unsubstantiated speculation." This could not be further from the truth.

Defendant's arguments are grounded in facts. It is a fact that this Court is currently presiding over three cases (and a fourth was dismissed) which puts at issue a core set of parties and facts. It is a fact that this Court has indicated an unwavering set of assumptions based on the various motions and hearings in these cases. It is a fact this Court wrote, "The Court will assume the parties' familiarity with the facts of this <u>interminable</u> case, which has

EXHIBIT 1

been pending for multiple years and spawned other cases, including a criminal matter." It is a fact that these so-called never-ending civil cases did not "spawn" a criminal case. It is a fact that the allegations about animal abuse have nothing to do with the civil pursuits of Carole Baskin. It is a fact that the alleged murder for hire charges will soon be significantly challenged, as Alan Glover will admit to perjuring himself at trial, James Garretson will testify about various Brady violations and has produced recorded calls which show significant government misconduct and Jeff Lowe will testify about various other Brady violations and deceit and manipulation by government agents. It is a fact this Court has responses due and hearings set to hold key witnesses, and this very Defendant, in civil and/or criminal contempt, which could certainly continue to contaminate an unbiased look at the new forthcoming evidence. It is a fact that this contamination prejudiced Defendant's presumption of innocence in the criminal case and due process at sentencing, such that this Court vocally vented his frustrations at the Defendant. These are a few of the indisputable facts that require recusal.

Another factual example is the August 29, 2019 Agreed Judgement and Permanent Injunction (Ex. 1 August 29, 2019 Agreed Judgement and Permanent Injunction) wherein this Court found:

> "Shirley M. Schreibvogel received transfers of funds from and of BCR's judgment debtor The Garold Wayne Interactive Zoological Foundation ("Garold Wayne Zoo") in an amount exceeding $150,000, during the period February 20, 2013 through February 28, 2016, each of which was a fraudulent transfer under 24 Okla. Stat. § 116(A)(1), and the transfers of funds are avoided under 24 Okla. Stat. § 119(A)(1)." (emphasis added).

These matters were pending and briefed in the civil case before Mr. Maldonado-Passage's criminal trial. The Order was entered in between trial and sentencing with this Court, deciding in an entirely unrelated matter that Mr. Maldonado-Passage was involved in fraud, despite him never being criminally charged or convicted of such. Further, the order states:

> "Shirley M. Schreibvogel had <u>received a fraudulent transfer</u> of certain real property[2] <u>from Maldonado,</u> which transfer was designed to prevent BCR from collecting its judgment against Maldonado." (emphasis added).

Was this judicially placed cloak of fraud put aside as it should have been? No, as this Court admitted by saying the Defendant had "zero wiggle room," his "pattern of conduct" was "particularly troubling," that he was "consumed" or "obsessed" with "silencing Carole Baskin," that he was "for years doing as he pleased," that he was "convinced that (he) will always know better," and that he may believe he was the only "in-step person in an out of step world." These statements (and others) combined with a vacated, illegal sentence are <u>facts</u> that are disqualifying.

This Court will be presented with affidavits like the attached at sentencing and in motions challenging the conviction. (Ex. 2 Jeffrey Lowe Affidavit) This new evidence must be considered on its own merit and it is included herewith to show the fundamental need for objectivity at sentencing and motions for post-trial relief. In contrast, in the civil case, Big Cat Rescue argued:

> "On November 16, 2018, Mr. Lowe posted on social media that he planned to let BCR take a default judgment and gain possession of the Property, but that he had "one huge final surprise for [BCR] to try and overcome," and planned "House of Cards style sh*t" to "play out to the end." *See* Ex.1 at ¶¶ 6-7, and Ex.1-1. These statements were made in the same time frame as

BCR's mediation with Mrs. Schreibvogel where she confessed the fraudulent scheme, BCR's motion for judgment as to the Property and related items, and the closing and draining of the PVNB bank account." (Ex. 3 Second Application Order to Show Cause)

This Court subsequently ruled, "Shirley M. Schreibvogel, that defendant received no consideration for the transfer of her interest in the Zoo Land to Jeffrey L. Lowe or defendant Greater Wynnewood Development Group, LLC ("GWDG")" and thus deemed them "fraudulent transfers as to BCR, under 24 Okla. Stat. § 116(A)(1)." Mr. Lowe has never been charged or convicted of any such crime. Further, this Court is presently considering contempt and/or sanctions against Mr. Lowe concerning alleged damage to the subject property years ago.

Statements about what occurred at a mediation are supposed to remain extrajudicial. Irrelevant matters are not supposed to be considered when weighing the veracity of a case or its witnesses. Yet, there has been so much cross contamination of this type, as exhibited by this Court at pretrial, trial and sentencing, a fresh start in the criminal case is the only option.

Congress' purpose in enacting section 455(a) was to "promote public confidence in the impartiality of the judicial process." 1974 U.S.C.C.A.N. at 6355; e.g., Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) (Rehnquist, C.J., dissenting). Twisting Defendant's Motion in such a way as to suppress Mr. Maldonado-Passage's constitutional rights to a fair sentencing and potential re-trial while ignoring the public's lack of confidence in this particular matter are simply bending the statutes out of their clear purpose.

"It is of no consequence that the judge is not actually biased because § 455(a) concerns not only fairness to individual litigants, but, equally important, it concerns the public's

confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." In re Kensington Intern. Ltd., 353 F. 3d 211, 220 (3d Cir. 2003). Despite the volumes of case law supporting disqualification, the government's response is based on "extrajudicial versus intrajudicial" knowledge. The fact that the parties are arguing over where and how this Court acquired information used in rendering decisions is, by itself, a ground for recusal, as it shows too much seeped into the criminal case.

The government buttresses its argument with a wildly overbroad statement, cited in Liteky v. United States, 510 U.S. 540, 114 S. Ct. 1147 (1994),"[a]ny facts or information that a judge is exposed to or learns while performing judicial duties are not extrajudicial and thus do not constitute grounds for disqualification." Before we outline why Liteky is subject to criticism, it is entirely distinguishable. It is not simply that the court heard other cases or even made adverse rulings in those cases, it is that this Court has become contaminated from the civil cases, and biased upon their facts, and can no longer be objective, as exhibited in rulings and statements.

On November 16, 1990, Father Ray Bourgeois, Charles Liteky, and John Liteky entered Fort Benning Military Reservation. While there, the defendants intentionally spilled human blood on display cases, carpets and walls at Fort Bennin. The three men committed the act to protest the killing of six Jesuit priests in El Salvador by School of the Americas trainees. Judge J. Robert Elliot presided over the defendants' trial in the district court. Before their trial, the defendants requested that Judge Elliot recuse himself pursuant to 28 U.S.C. § 455 because he had presided over the 1983 trial of Father Bourgeois, which involved a

separate protest regarding El Salvador. The motion was based on a few specific objections to Judge Elliot's conduct at the prior trial, none of which were particularly inflammatory or personal. They noted the judge interrupting and arguing with counsel, for instance.

Once heard by the Supreme Court, Justice Scalia elucidated the doctrine stating, "Grinnell (the only opinion of ours to recite the doctrine) clearly meant by 'extrajudicial source' a source outside the judicial proceeding at hand- which would include as extrajudicial sources earlier judicial proceedings conducted by the same judge." Overlap is going to be a product of our court system as long as people re-offend. That was the issue in Liteky with Father Bourgeios. That isn't the issue with Joseph Maldonado-Passage.

Hearing evidence regarding two different and distinct crimes is very different than presiding over three cases so intricately intertwined that it becomes impossible to differentiate the evidentiary facts of each case, whether or not the Court desires to keep those facts separate. Further, in Litkey, there was no punitive monologue as was exhibited here when condemning Father Bourgeios, finding him to be out of step, selfish, troubling, incapable of ownership of animals, etcetera.

Justice Scalia embarked on renaming the extrajudicial source doctrine, deciding that it was more appropriate to speak of an extrajudicial source "factor." Scalia reasoned,

> Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' factor ... in recusal jurisprudence.

Id.

This impossibility standard referenced in Litkey is the practical equivalent of the per

se rule that the majority sought to reject. Under this standard, a challenge under section 455(a) would fail "even if it were shown that an unfair hearing were likely, for it could be argued that a fair hearing would be possible nonetheless." Id. at 1161 (Kennedy, J., concurring). And, "The court's 'impossibility of fair, judgment' test bears little resemblance to the objective standard Congress adopted in section 455(a): whether a judge's impartiality might reasonably be questioned." Id. Even though it is entirely factually distinguishable, the dichotomy between the face of the statute and the Court's interpretation of the statute was without justification. This is ripe for determination by the appellate courts if extended beyond a "factor."

Liteky also ignored Liljeberg, a case dealing directly with section 455(a). Although Liljeberg did not address the extrajudicial source doctrine, it enunciated the showing necessary for recusal under section 455(a). The Court held that "a violation of § 455(a) is established when a reasonable person, knowing the relevant facts, would expect that a justice, judge, or magistrate knew of circumstances creating an appearance of partiality." As noted many times since, the Supreme Court in Liteky conveniently ignored this binding precedent in announcing its overbroad updated standard for recusal under section 455(a).

While the Defendant does not waive the argument that there was too much "intrajudicial" knowledge (past and present) and tainting of the Court's opinion of Mr. Maldonado-Passage and witnesses in the case, it is not merely the knowledge of the same that is disqualifying. It is the application thereof when presiding over the criminal case.

Meanwhile, the perception of bias continues well past the norm. It culminated with not only the chief prosecutor being voted on by judges of the Western District of Oklahoma,

but with her continuing this negative narrative of the Defendant from the bench, appearing not only in Tiger King, but as a guest speaker at the 2021 Animal Conference hosted by the Kirkpatrick Foundation in a speech solely about prosecuting the Defendant. We note it was cancelled days before it was to be given because of "scheduling conflicts."

There are 5 Canons of Ethics which predominantly govern federal judges:

| | |
|---|---|
| Canon 1: | A Judge Should Uphold the Integrity and Independence of the Judiciary |
| Canon 2: | A Judge Should Avoid Impropriety and the Appearance of Impropriety in All Activities |
| Canon 3: | A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently |
| Canon 4: | A Judge May Engage in Extrajudicial Activities That Are Consistent With the Obligations of Judicial Office |
| Canon 5: | A Judge Should Refrain From Political Activity |

A judge should avoid impropriety and the appearance of impropriety in all activities. All activities. A judge should perform the duties of the office fairly, impartially and diligently. Leaving Judge Green's desire to speak about the case from the bench out of this entirely, these Canons are the guideposts. Calling Mr. Maldonado-Passage a "liar" or "fraud" and holding him and his witnesses in "clear and convincing" contempt in concurrent civil cases while insulting and over-sentencing him, is prejudicial. The only way to reverse the appearance of impropriety and restore the appearance of impartiality is to withdraw.

When asked about his role as a Judge during U.S. Senate confirmations, Judge Palk said,

"As a state and federal prosecutor for over twenty years, my clients have been

the public at large. While protecting the rights of the public, I was also committed to protecting the rights of the defendant, presenting evidence and argument within the confines of the Constitution, statutes, and controlling precedent. If confirmed, I will make every decision objectively, carefully considering the facts presented and applying the Constitution, statutes, and controlling precedent."

In order for there to be faith in the judiciary, the boundaries need to be fixed and crystal clear. There can be no room for ambiguity. In this unique circumstance, the lines have become blurred and there is no real boundary between the civil cases and the constitutionally significant criminal case. The issues, the parties, the evidence and the decisions overlap and are intimately connected. A ruling in one case bleeds into the facts of the other two cases. This has and will violate Mr. Maldonado-Passage's rights. This is why recusal is necessary. Having an independent judiciary, matters. It matters not just for Mr. Maldonado-Passage, but for the Plaintiff, this Court and the public at large.

WHEREFORE, the Defendant respectfully requests this Court recuse from further proceedings in this case and for the reassignment to another sitting District Court judge.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and a copy hereof has been furnished to those registered participants of the ECF system.

/s/ John M. Phillips
John M. Phillips
Florida Bar No.:0477575
/s/ Amy M. Hanna
Amy M. Hanna
Florida Bar No.: 0120471
212 N. Laura Street
Jacksonville, FL 32202
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Defendant
amy@floridajustice.com
jphillips@floridajustice.com