## Option and Purchase Agreement

This agreement ("Agreement") is entered into as of November 28th, 2017, between Royal Goodes LLC. ("Producer"), on the one hand, and Joe Maldonado ("Owner"), an individual, on the other hand, with respect to the purchase by Producer of all rights herein set forth in and to the life story of Owner and all elements thereof (which life stories and the plots, themes, characters, characterizations, events and incidents thereof, whenever they occurred are hereinafter collectively referred to as the "Story"), in connection with a proposed documentary project (the "Picture") to be based on the Story. For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. <u>Rights</u>: The "Rights" shall be defined as follows:

    1.1  Any and all motion picture, television, online, radio, publishing, publication and allied, ancillary and subsidiary rights of every kind, nature and description (whether or not such rights are now recognized or contemplated) throughout the universe, in and to the Story and in and to copyright therein for the purpose of creating, producing, exhibiting and exploiting a documentary film or series, based on the Story, and all renewals and extensions of any such copyright. The rights conveyed to Producer hereunder are limited to Producer's right to make a documentary film or series, which shall include, without limitation, merchandising rights, mechanical reproduction and distribution rights, audio and/or visual recording rights, standard and non-standard television and other broadcast and transmission rights (including, without limitation, network, syndication, pay, cable, online streaming, MDS, DBS, SMATV, satellite, videocassette, videodisc, cartridge, sustaining and subscription television rights) and all silent, sound, and talking rights in and to the Story, in perpetuity, in any and all media and languages.

    1.2  The right to exploit the Picture in perpetuity throughout the universe in any media and in any manner, now known or hereafter devised, as Producer, in its sole discretion, shall elect.

    1.3  The right to exploit all ancillary rights, including, without limitation, the right to advertise, promote and publicize the Picture, and the right to exercise merchandising and commercial tie-in rights using elements and/or materials of, from or relating to the Story, the Picture solely in connection with products and/or services based upon or relating to the Picture and/or the Story. In connection with such advertising, promotion and publicity, Producer shall have the right to prepare print versions of the foregoing.

    1.4  The right to make any and all changes in and adaptations of the Story in connections with the rights granted to Producer hereunder. Owner hereby waives any so-called "droit moral" or moral rights of authorship which Owner may have with respect to the Story, the Picture, and any element thereof. Further, nothing in this Agreement shall be construed as requiring Producer to exercise or exploit any of the Rights granted to or acquired by Producer under this Agreement.

974538v4

Exhibit 1

1.5     The right to use in any manner as Producer determines in connection with the Picture and the Story and the exploitation thereof any materials contained in interviews with Owner and the results and proceeds therefrom or to refrain from using any such materials.

1.6     The right to use the name, likeness and biography of Owner and/or Owner's family, in and in connection with the advertising, publicity and exploitation of the Picture and the Story. Owner acknowledges that all rights in and to the Picture and the Story hereunder shall be the sole and exclusive and absolute property of Producer for any and all purposes whatsoever in perpetuity. All rights granted hereunder with respect to the Picture shall be deemed granted with respect to the Story produced by or under the authority of Producer pursuant to this agreement.

2.   Option:

2.1     Grant: Owner hereby grants to Producer the exclusive and irrevocable right and option (the "Option") to purchase the rights in and to the Story, as more particularly set forth in paragraph 1, on the terms and conditions set forth herein. Producer may exercise the option at any time during the period (the "Option Period") commencing on the date of execution hereof and continuing until the date eighteen (24) months thereafter.

2.2     Option Payment: In consideration of the grant of the Option as provided herein, Producer agrees to pay and Owner agrees to accept the sum of Two Thousand Dollars ($2,000.00) (the "Option Price"), One Thousand Dollars ($1000.00) payable upon execution hereof and One Thousand on or before Nov 28th 2018. The Option Price shall be applicable against the Purchase Price, as defined herein below.

2.3     Extension Period: Owner grants to Producer the exclusive and irrevocable right and option to extend the Option Period for an additional period of twelve (12) months (the "Extension Period") by so notifying Owner in writing and paying to Owner, at any time prior to the expiration of the Option Period, the additional sum of Five Thousand Dollars ($5,000.00) (the "Extension Payment"). The Extension Payment, if paid by Producer to Owner, shall be applicable against the Purchase Price, as defined herein below. The initial Option Period and the Extension Period shall sometimes be collectively and/or individually referred to herein as the "Option Period."

2.4     Other Extensions: In the event that a claim is asserted (whether or not resulting in litigation) which involves the breach or alleged breach of any of Owner's representations, warranties or agreements contained herein, the Option Period shall automatically be extended for a period of time equal to the period of time in which such claim is outstanding or unresolved. In addition, if there shall be an event of force majeure (as that term is customarily defined in the entertainment industry) including, without limitation, any strike, walkout or other work stoppage by any union, guild or other labor organization against motion picture producers during the Option Period, and if such force majeure directly hinders Producer with respect to the exercise of the rights granted hereunder, the Option Period shall automatically be extended by a period equal to the duration of such event of force majeure.

974536v4

Exhibit 1

for purposes of copyright, said material shall be deemed a work made for hire and Producer shall be the author of such materials. Producer shall have sole and perpetual ownership of all rights of every kind and nature throughout the universe in and to such materials and the results and proceeds of Owner's said services.

      5.3    Nothing contained in this Agreement shall be deemed to constitute a grant to Owner of any right to approve the Picture or the Story or any element thereof it being specifically understood that as between Owner and Producer, Producer shall have final control and approval over the Picture and elements thereof and shall own all right, title and interest in and to same.

6.    <u>Release</u>:

      6.1    Owner hereby releases Producer and its licensees, successors and assigns from any and all claims, demands and causes of action that Owner may at any time have against Producer by reason of, arising out of or in connection with the Picture or in connection with the promotion, advertising and publicity thereof. Without limiting the foregoing, Owner hereby waives any claim or demand against Producer or its licensees, successors or assigns for invasion of privacy, violation of the right of publicity, libel, slander, presentation of any character or person in the Story in a false light or otherwise, in connection with the Picture or the promotion, advertising and publicity thereof.

      6.2    Owner further agrees to assist Producer in obtaining releases from such individuals depicted in the Picture as Producer may designate.

7.    <u>Representations and Warranties</u>:    Owner represents and warrants that:

      7.1    Owner is the sole and exclusive owner and proprietor throughout the universe of the Story and any and all rights therein; Owner has the full right, power and authority to enter into this Agreement and to grant to Producer the documentary rights herein stated to be granted; the Story is wholly original with Owner and shall not infringe upon or violate the copyright, right of privacy, right against defamation, right of publicity, or any other personal or proprietary right of any person; Owner has not granted to any person nor will Owner grant to any person any right or the option to acquire any right which would or might conflict with any of the rights granted to Producer hereunder or which might impair or diminish the value of the rights granted to Producer hereunder.

      7.2    To the extent the Story, or any element thereto or any publication based thereon is protected by copyright, then, with respect thereto, Owner represents and warrants further that Owner will not permit the Story, or any versions, whether published or unpublished and whether copyrighted or not copyrighted, to fall into the public domain, and will take any and all steps and proceedings required to maintain and protect the copyright and renewals and extensions thereof.

8.    <u>Indemnity</u>:

Owner will indemnify and hold harmless Producer and Producer's licensees, representatives, successors and assigns, and the employees, officers, directors, agents,

Exhibit 1

to the expiration of the Option Period, whichever is earlier. Concurrently with the execution hereof, Owner is executing and depositing with Producer a short form Assignment (the "Assignment") in the form of Exhibit "B" attached hereto. If Producer exercises the Option, then upon such exercise the Assignment shall be deemed dated as of the date of such exercise, Producer being hereby authorized to date the Assignment accordingly, and the Assignment shall be conclusively deemed to have been executed and delivered by Owner.

3. Compensation:

   3.1 Fixed Compensation: In the event that Producer exercises the Option, and upon condition that Owner is not in material breach, Owner shall be paid an amount equal to Twenty Five Thousand Dollars (the "Purchase Price"), payable as follows: (i) Twelve Thousand Five Hundred Dollars ($12,500.00) payable upon exercise of the Option, and (ii) Ten Thousand Dollars ($10,000.00) upon completion of principal photography. It is agreed between the parties that the Option Price and Extension Payment, if any, is applicable against the Purchase Price.

   3.2 Contingent Compensation:

       3.2.1 If Producer produces or causes the Picture to be produced, Owner shall be entitled to receive an amount equal to half a percent (.5%) of one hundred percent (100%) of Producer's share of the net profits, if any, derived from the exploitation of the Property. For purposes of this Agreement, "net profits" shall be defined, computed and paid to Owner in accordance with Producer's standard definition of net profits, provided that in no event shall the net profits definition accorded to Owner be less favorable than the definition of net profits accorded Producer by the worldwide distributor(s) of the Property.

4. Best Efforts:

   By entering into this agreement, the parties agree to spend a reasonable amount of time and effort to make the Picture a success. During the Option Period, Producer may engage in any pre-production or production activities in order to raise necessary production financing. By accepting payment for the Option, Owner agrees to cooperate with said efforts. Nothing contained in this Agreement shall be construed as requiring Producer to exercise or exploit any of the rights optioned, granted to or acquired by Producer under this Agreement.

5. Access to Owner:

   5.1 Owner shall be available to Producer on a non-exclusive basis as and when reasonably requested by Producer, for interviews and other information, as needed. Owner will provide Producer with any and all information which Owner has available on the Story, including, without limitation, copies of press clippings, photographs and the like, which Producer may deem useful in the development of the Story and/or preparation of a documentary.

   5.2 Any and all materials prepared by Owner or filmed by Producer shall be deemed specially commissioned by Producer for use as a part of the Picture, and, accordingly, for purposes of copyright, said material shall be deemed a work made for hire and Producer shall be the author of such materials. Producer shall have sole and perpetual ownership of all rights of

Exhibit 1

representatives, attorneys and shareholders of each of them, from and against any and all claims and expenses (including reasonable counsel fees and costs) in connection with any warranty, covenant, undertaking, representation or agreement made or entered into in this agreement by Owner.

9. <u>Owner's Remedies</u>:

Owner agrees that his remedies in connection with any dispute regarding the Agreement shall be limited to those at law for damages, if any, and Owner waives any right whatsoever in equity, and may not enjoin, restrain or interfere with the use or exploitation, in any manner, of the rights granted in the Property hereunder.

10. <u>Reserved Rights</u>:

Owner reserves dramatic motion picture, television, mini-series, movie of the week, legitimate stage rights, and radio rights, (subject to the radio rights granted to Producer for advertising, promotion, and exploitation purposes as set forth above). Owner agrees not to exercise, or to authorize or permit the exercise of, or to sell, license or otherwise dispose of any of the reserved without granting Producer the opportunity to acquire any of the reserved rights on a first negotiation/last refusal rights basis.

11. <u>Payments and Notices</u>:

All notices hereunder shall be in writing and shall be deemed given hereunder on the date delivered by hand, telegraph or facsimile or a date forty-five (45) hours after the date mailed by certified mail. Until further notice, the addresses of the parties shall be as follows:

<u>Owner</u>:
Joe Maldonado

<u>Producer</u>:
Royal Goodes LLC.
49 Bleeker Street
Suite 601
New York, New York 10012

<u>With a copy to</u>:
Paul Brennan
Bruns, Brennan and Berry
99 Madison Avenue 5th Floor
New York, NY 10016

12. <u>Further Documents</u>:

Owner will execute and deliver to Producer any further documents, assignments or instruments which Producer may reasonably require. If Owner fails, for any reason, to execute and deliver any such document within five (5) business days after so requested by Producer, Owner hereby irrevocably designates Producer as Owner's attorney-in-fact to execute and deliver such document and agrees that such power is irrevocable and coupled with an interest.

Exhibit 1

13. <u>Miscellaneous</u>: This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns. Producer's remedies in the event of a breach of this Agreement shall be cumulative and the exercise of one shall not preclude the exercise of any others for the same or any other default. Producer may recover by appropriate action or may withhold from any compensation or payment payable to Owner the damages to Producer resulting from any default. Owner agrees that he has had the opportunity to seek and acquire legal advice and counsel in connection with the execution of this Agreement and that his signature below indicates complete acceptance and understanding of the terms herein. This Agreement shall be governed and interpreted in accordance with the laws of the State of New York and any dispute in connection with this Agreement shall be submitted to binding arbitration according to the rules of the American Arbitration Association. Producer may assign this Agreement and its rights hereunder to any person or entity. Owner may not assign this Agreement or his rights hereunder, to any person or entity. Captions and headings herein are inserted for purposes of efficiency only and are not to be given any force or effect in interpreting this Agreement. This Agreement comprises the full and complete understanding of the parties hereto regarding the subject matter hereof and any modification thereof must be in writing, signed by the parties. Facsimile signatures hereon shall have the same force and effect as original signatures.

IN WITNESS HEREOF, the parties hereto have executed this Agreement the day and year first above written.

_____
Joe Maldonado

_____
Royal Goodes LLC.
By: _R CHOKLY_
Its: _PRODUCER_

Exhibit 1

Rebecca Chaiklin
Royal Goode Productions
247 Centre Street Suite 7W
New York, NY 10013

February 14, 2019

Dear Joe,

I am writing to inform you that we, Royal Goode Productions (Producer) are exercising our option for your life rights as per our agreement signed Nov 28, 2017.

We are super excited about the project.

Warmly,

*[signature]*

Rebecca Chaiklin
Director / Producer

I, Joe Maldonado Passage am in receipt of this notice.

*[signature]*

Joseph Maldonado Passage

$20,000 Due in Pmts of
$5,000 Now
$5,000 May 1, 2019
$5,000 July 1, 2019
$5,000 Sept 1, 2019

Exhibit 1