FILED
United States Court of Appeals
Tenth Circuit

December 30, 2024

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOSEPH ALLEN MALDONADO,

    Defendant - Appellant.

No. 24-6133
(D.C. Nos. 5:24-CV-00048-SLP,
5:18-CR-00227-SLP-1)
(W.D. Okla.)

_____

ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **BACHARACH**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

    To appeal the denial of a 28 U.S.C. § 2255 motion, the movant must first obtain a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). Joseph Allen Maldonado, a prisoner in federal custody, requests a COA regarding the district court's denial of his § 2255 motion. Mr. Maldonado argues that a COA is justified because the district court purportedly committed nineteen errors while denying the § 2255 motion. Because reasonable jurists would not debate the district court's decision, we deny Mr. Maldonado's application for a COA and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

## I.  BACKGROUND

This is the latest of several appeals Mr. Maldonado has filed with this court, following his twenty-one-count conviction for violations of the Endangered Species Act (the "ESA"), violations of the Lacey Act, and murder-for-hire under 18 U.S.C. § 1958(a). *See United States v. Maldonado-Passage* (*Maldonado I*), 4 F.4th 1097, 1101–02 (10th Cir. 2021); *United States v. Maldonado-Passage* (*Maldonado II*), 56 F.4th 830, 834 (10th Cir. 2022). Because the facts underlying Mr. Maldonado's twenty-one-count conviction were detailed in our previous opinions, *see Maldonado I*, 4 F.4th at 1099–1102, we recount only the facts relevant to Mr. Maldonado's § 2255 motion.

### A.  *Factual Background*

Prior to his federal indictment, Mr. Maldonado operated the G.W. Exotic Animal Park (the "Park") in Wynnewood, Oklahoma. *Id.* at 1099. On November 16, 2016, John Finlay, a Park employee, delivered one of the Park's tiger cubs to Brown's Zoo in Illinois, "which was operated by Ivan and Nancy Brown." App. at 213. Mr. Finlay testified that he gave the cub and a delivery form to Ms. Brown, who gave Mr. Finlay at least $350 in return. Mr. Finlay then returned to the Park, where he gave the money to Mr. Maldonado. The delivery form from this transaction listed Mr. Maldonado as the "Seller/Donor." *Id.* at 257.

Mr. Finlay delivered another tiger cub to Brown's Zoo on March 6, 2018. Mr. Finlay testified that on this occasion, Ms. Brown again paid him at least $350 for the cub. Mr. Finlay testified that when he returned to the Park, he gave the money "straight to [Mr. Maldonado]." Tr. Vol. IV at 752.

Based on these events, Mr. Maldonado was indicted with two counts of selling endangered animals in violation of the ESA and two counts of falsely labeling the sale of the cubs as a "donation" in violation of the Lacey Act. At trial, Mr. Maldonado admitted that the November 2016 transaction "could have been" a sale. Tr. Vol. VI at 960. And he admitted that the March 2018 transaction was "[p]robably" a sale. *Id.* at 962. He also agreed that Mr. Finlay likely gave him money from these transactions.

However, because he had sold the Park to a third party, Jeff Lowe, before the two sales took place, Mr. Maldonado's theory of defense was that Mr. Lowe and the Park were culpable for the unlawful sales, rather than himself. Mr. Maldonado testified that he "didn't sell anything and [] didn't collect a dime for" himself, but rather all the money was deposited into Mr. Lowe's bank account. *Id.* at 963. The jury disagreed and convicted Mr. Maldonado on all four counts.

Mr. Maldonado subsequently filed two direct appeals, primarily contesting his murder-for-hire convictions. *See Maldonado II*, 56 F.4th at 836. He also filed a motion for a new trial, which the district court denied.[1] And he filed the present § 2255 motion.

### B.   Procedural History

In his § 2255 motion, Mr. Maldonado argued his trial counsel, William Earley, provided ineffective assistance by failing to unearth evidence that the two cubs were not sold to Brown's Zoo. In support, Mr. Maldonado attached an unsworn affidavit by Mr. Brown, one of the owners of Brown's Zoo. In relevant part, Mr. Brown's affidavit

---

[1] Mr. Maldonado separately appealed the denial of his motion for a new trial in case number 23-6207. That appeal is pending before a different panel.

states that (1) "[a]t no time did [Mr. Maldonado] sell a tiger cub to [Mr. Brown] or the Brown Zoo"; (2) he "did not buy a tiger cub from [Mr. Maldonado] on November 16, 2016, or on March 8, 2018"; (3) "[w]hen animals were traded between" Mr. Maldonado and Brown's Zoo "all government forms were correctly and accurately filled out"; and (4) he was never contacted by Mr. Earley regarding whether the tiger cubs were sold to Brown's Zoo. App. at 243. Mr. Maldonado asserted that if Mr. Earley had "call[ed] Mr. Brown at trial it is likely" that he would not have been convicted for selling the tiger cubs to Brown's Zoo. *Id.* at 241.

In its response, the Government provided affidavits from Mr. Earley and his co-counsel, Kyle Wackenheim, explaining why Mr. Brown was neither contacted nor called at trial. In their affidavits, the attorneys explain that the theory of defense regarding the sales to Brown's Zoo "was not that these transactions did not take place, but that Mr. Maldonado [] was not involved in the transactions" because he was "no longer the owner of the exotic animal park" when the transactions occurred. *Id.* at 262–63. Mr. Wackenheim avers that throughout many pretrial meetings, Mr. Maldonado gave counsel "the names of many individuals to track down and interview," but "[n]one of [those] individuals concerned the Brown Zoo transactions specifically." *Id.* at 259–60. Similarly, Mr. Earley attests that Mr. Maldonado "did not provide Ivan Brown's name as a potential witness," nor "request [that] counsel contact Nancy Brown" to testify, because the defense theory was that Mr. Maldonado was not responsible for those transactions, not that they did not take place. *Id.* at 262.

4

The district court denied Mr. Maldonado's § 2255 motion for several reasons. As a threshold issue, the court found that "Mr. Brown's affidavit—the sole exhibit supporting [Mr. Maldonado's] motion—[was] procedurally defective" because it was not notarized and was not signed under penalty of perjury, as required by 28 U.S.C. § 1746. *Id.* at 219. The court then found that even if it treated the affidavit as competent evidence, Mr. Maldonado's argument for relief under § 2255 was "woefully underdeveloped" and did not meaningfully argue why he was prejudiced by Mr. Brown's absence at trial. *Id.* at 220. The court then found in the alternative that Mr. Maldonado had not demonstrated his counsel provided ineffective assistance—the court rejected his "bare assertion that" he "told Mr. Earley that Mr. Brown was a favorable witness" as unsupported by the record and "contrary to the theory of the case." *Id.* at 221. The court specifically found there was no evidence indicating Mr. Maldonado "ever told his trial counsel that the alleged cub sales did not take place." *Id.* Finally, the court concluded that even if Mr. Maldonado had sufficiently demonstrated that counsel's performance was ineffective, he had not shown prejudice because Mr. Brown's affidavit was "inconsistent with the theory of defense presented at trial." *Id.* at 222. In particular, the court noted that Mr. Brown's version of events "would contradict both Mr. Finlay's account of his trips to Brown's Zoo and [Mr. Maldonado's] own testimony." *Id.*

Thus, the district court denied Mr. Maldonado's § 2255 motion. The district court also declined to issue a COA, finding Mr. Maldonado had "not made a substantial showing of the denial of a constitutional right" sufficient to justify issuance of a COA. *Id.* at 223. Mr. Maldonado then filed the present application for a COA.

## II. STANDARD OF REVIEW

This court can issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a COA, the applicant must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Although a COA applicant "is not required to prove the merits of his case, he must demonstrate 'something more than the absence of frivolity or the existence of mere good faith.'" *Id.* (quoting *Miller-El*, 537 U.S. at 338).

## III. DISCUSSION

In his application for a COA, Mr. Maldonado lists nineteen different issues with the district court's denial of his § 2255 motion. We conclude that reasonable jurists would not debate the district court's denial of the § 2255 motion.

At the outset, Mr. Maldonado raises many arguments on appeal that he did not present to the district court. In particular, Mr. Maldonado did not argue before the district court that (1) Mr. Brown was "a necessary and indispensable witness essential to support the prosecutor's conviction," as argued in the third issue, App. at 9; (2) the doctrine of attorney–client privilege barred Mr. Maldonado's trial counsel from providing relevant details about their representation of Mr. Maldonado, as argued in the fourth, fifth, and

6

nineteenth issues;[2] (3) the prosecution did not call Mr. Brown because it "did not believe [he] would help the prosecution" and counsel thus should have known to interview Mr. Brown, as argued in the tenth issue, *id.* at 10; (4) counsel did not adequately understand the requirements of the ESA, as argued in the eleventh issue; (5) counsel was incapable of working "with clients of different professional styles or experiences and cultural styles," as argued in the fifteenth issue, *id.* at 11; and (6) counsel provided ineffective assistance by "failing to explore" whether Mr. Finlay lacked personal knowledge that Mr. Maldonado deposited money from the Brown's Zoo transactions into his own bank account, as argued in the sixteenth issue, *id.* Mr. Maldonado did not make any of these arguments in his § 2255 motion, nor does he explain why we should consider such arguments for the first time here. Accordingly, "we find no reason to deviate from the general rule that we do not address arguments presented for the first time on appeal." *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002).

Another argument easily addressed is Mr. Maldonado's assertion that the district court "erred in focusing on the technicalities of [Mr.] Brown's affidavit rather than

---

[2] The district court did grant the Government permission to attach affidavits to its response to the § 2255 motion in which trial counsel detailed relevant trial strategy and explained why they did not interview Mr. Brown. But Mr. Maldonado never asked the district court to reconsider this ruling nor filed a reply brief arguing that the district court should reject those affidavits based on attorney–client privilege. Nor does he cite any authority casting doubt on the district court's consideration of the affidavits. Indeed, the district court correctly found that Mr. Maldonado waived the privilege by bringing an ineffective-assistance claim against his counsel. *See United States v. Pinson*, 584 F.3d 972, 977–78 (10th Cir. 2009) ("When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney–client privilege with respect to those communications.").

whether there was sufficient reason for diligent counsel to pursue calling [Mr.] Brown as a defense witness." Appellant's Br. at 39. The district court found Mr. Brown's affidavit was defective because it was not made under oath and notarized, nor was it made under penalty of perjury as required by 28 U.S.C. § 1746. Mr. Maldonado does not contest the district court's reasoning—rather, he asserts that the district court should have "treat[ed] the affidavit, technically correct or not, as a proffer and convene[d] an evidentiary hearing." *Id.* Mr. Maldonado cites no legal authority to support this argument. Nor does he explain why he is entitled to an evidentiary hearing *solely* on the basis of an unsworn, defective affidavit. This argument is meritless.

The remaining issues raised by Mr. Maldonado generally challenge the district court's decision that he has not raised a cognizable claim of ineffective assistance of counsel. The Sixth Amendment guarantees that criminal defendants shall receive "the Assistance of Counsel" in mounting their defense. U.S. Const. amend. VI. The Supreme Court has long held that this "right to counsel is the right to the *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Whether a defendant received effective assistance of counsel is a "mixed question of law and fact [that] we review de novo." *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998) (quotation marks omitted).

To demonstrate ineffective assistance of counsel, a defendant must satisfy the two-pronged inquiry set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), by showing: "(1) that his counsel's performance fell below an objective standard of reasonableness and (2) that the deficient performance was prejudicial to his defense." *Hickman*, 160 F.3d

8

at 1273 (citing *Strickland*, 466 U.S. at 688, 694). The court's "review of counsel's performance under the first prong of *Strickland* is a 'highly deferential' one." *United States v. Holloway*, 939 F.3d 1088, 1103 (2019) (quotation marks omitted). Indeed, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. Accordingly, in reviewing a claim of ineffective assistance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* "The defendant bears the heavy burden of overcoming that presumption." *Holloway*, 939 F.3d at 1103 (internal quotation marks omitted).

Mr. Maldonado has not overcome the presumption that his trial counsel provided effective representation. As the district court explained, there is no evidence indicating that Mr. Maldonado ever told counsel to contact Mr. Brown, nor that the tiger cubs were not donated or sold to Brown's Zoo. In his § 2255 motion, Mr. Maldonado's counsel asserted that Mr. Maldonado "told Mr. Earley that Mr. Brown was a favorable witness." App. at 240. However, counsel's arguments are not evidence. *See State Farm Fire & Cas. Co. v. Telecomm Consultants, Inc.*, 757 F. App'x 726, 730 (10th Cir. 2018) (unpublished) ("Arguments by counsel in briefs are not evidence."). Mr. Maldonado did not provide an affidavit or declaration averring that he told counsel that the transactions with Brown's Zoo never took place. Nor does Mr. Maldonado point to anything in the record indicating that he told his counsel the sales never took place. Because we "review

9

[an] ineffective assistance of counsel claim from the perspective of [Mr. Maldonado's] counsel at the time he rendered his legal services, not in hindsight," *Hickman*, 160 F.3d at 1273, Mr. Maldonado's failure to tell his counsel that the transfers did not occur adequately explains why counsel did not investigate this theory by contacting Mr. Brown.

Furthermore, counsel's decision not to ask Mr. Brown to testify easily "falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, given that Mr. Maldonado's theory of defense was that he was not responsible for selling the tiger cubs. This is evident in Mr. Maldonado's testimony—he agreed that "whether or not [the tiger cubs were] being sold or someone was providing a donation," the transaction "was between Mr. Lowe and" the party receiving the cub, and he testified that any money from such proceeds went to the Park, not himself. Tr. Vol. VI at 963. And Mr. Earley and Mr. Wackenheim both submitted affidavits stating that defense discussions relating to the ESA and Lacey Act charges focused on whether the transactions were "donations or transfers between zoos" and whether Mr. Maldonado was liable because he "was no longer the owner of the" Park. App. at 259. Both attorneys averred that Mr. Maldonado did not deny "[t]he Brown's Zoo transactions . . . during pretrial preparations." App. at 262. Thus, considering this line of defense, there would have been no reason for trial counsel to contact Mr. Brown and ask if a sale ever took place.

Mr. Maldonado thus has not overcome the presumption that counsel's decision not to investigate whether the sales took place "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Accordingly, we hold that reasonable jurists would not debate the district court's rejection of Mr. Maldonado's ineffective-assistance claim, and we decline to issue a COA on this claim.

## IV.  CONCLUSION

For the foregoing reasons, we DENY Mr. Maldonado's application for a COA and DISMISS this matter.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

December 30, 2024

Roger Isaac Roots
Roger Roots
113 Lake Drive East
Livingston, MT 59047

**RE:**    **24-6133, United States v. Maldonado**
Dist/Ag docket: 5:24-CV-00048-SLP, 5:18-CR-00227-SLP-1

Dear Counsel:

Enclosed is a copy the court's final order issued today in this matter.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:    Steven W. Creager

CMW/art